IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| MEAGAN HARRIS-FRYE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. |
| § | |
| UNITED OF OMAHA LIFE § | |
| INSURANCE COMPANY, § | |
| § | |
| and § | |
| § | |
| BOARD OF TRUSTEES, MID-SOUTH § | |
| CARPENTERS REGIONAL COUNCIL § | |
| HEALTH AND WELFARE FUND § | |
| as Plan Administrator for the § | |
| MID-SOUTH CARPENTERS § | |
| REGIONAL COUNCIL § | |
| HEALTH AND WELFARE FUND, § | |
| § | |
| Defendants. § | |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE
ENFORCEMENT OF RIGHTS UNDER ERISA**

COMES NOW, Plaintiff, Meagan Harris-Frye, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay long term disability (LTD) benefits due under an ERISA employee benefit plans, and for Defendants' other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 et seq. and the subject Benefit Plan constitutes "plan[s] under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4. Plaintiff, Meagan Harris-Frye (hereinafter "Plaintiff"), is currently and was at all relevant times, a resident of Hamilton County, Tennessee.

5. Defendant United of Omaha Life Insurance Company (hereinafter "United of Omaha"), is an insurance company authorized to transact the business of insurance in this state, and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

6. Defendant United of Omaha is the party obligated to pay benefits and to determine eligibility for benefits under Group Life and Accidental Death and Dismemberment Benefits Policy No. GLUG-AIBT (the "Policy"), issued by United of Omaha to Mid-South Carpenters Regional Council ("Mid-South Carpenters").

7. Plaintiff alleges upon information and belief that the Board of Trustees, Mid-South Carpenters Regional Council Health and Welfare Fund (the "Plan Administrator") is the Plan Administrator for the Mid-South Carpenters Regional Council Health & Welfare Fund (the "Plan"). The Plan is, and at all relevant times was, an "employee welfare benefit plan" as

defined by ERISA. The Plan Administrator may be served with process at, P.O. Box 1449, Goodlettsville, Tennessee 37070-1449.

## FACTS

8. Plaintiff's father, Rusty Harris, was a member of a local union affiliate of Mid-South Carpenters, in Hamilton County, Tennessee.

9. By virtue of his membership, Rusty Harris was enrolled in the Plan, which provides, among other benefits, life insurance coverage.

10. Mr. Harris also enrolled for a voluntary additional benefit through the Plan for which Mr. Harris's mother paid the premiums.

11. Plaintiff was the sole beneficiary of Mr. Harris's life insurance benefits under the Plan, and is therefore a beneficiary of the Plan.

12. Benefits under the Plan are insured by United of Omaha under the Policy, issued by United of Omaha to Mid-South Carpenters.

13. Mr. Harris ceased work due to a disability in September of 2011, while covered under the Plan.

14. Premiums for Mr. Harris's coverage under the Plan continued to be paid thereafter and were paid through June of 2012.

15. Mr. Harris died on May 2, 2012 from acute kidney disease.

16. Within two weeks of Mr. Harris's death, his family contacted the Plan Administrator in order to make a claim under the Plan; however, the Plan Administrator denied that Mr. Harris was eligible for benefits under the Plan, and further refused to provide a claim form, or a complete copy of the Plan Documents, including the Policy.

17. On December 4, 2012, Plaintiff, through the undersigned counsel requested in writing a copy of the relevant ERISA Plan documents from the Plan Administrator. (attached as Exhibit A to the Complaint).

18. Despite this request being certified as received on December 6, 2012, the Plan Administrator failed to appropriately respond to the December 4, 2012 request for the ERISA Plan documents, sending only pages 40 and 41 of the summary plan description.

19. On March 14, 2013 the Plaintiff, through the undersigned counsel, again requested in writing a copy of the relevant ERISA Plan documents from the Plan Administrator, specifically explaining that the prior response was insufficient to comply with ERISA § 502(c). (attached as Exhibit B to the Complaint).

20. The Plan Administrator received the request on March 18, 2013, but failed to make any response to this request for ERISA Plan documents.

21. On April 29, 2013 the Plaintiff, through the undersigned counsel, again requested in writing a copy of the relevant ERISA Plan documents (for the third time) from the Plan Administrator. (attached as Exhibit C to the Complaint).

22. The Plan Administrator received the request on April 30, 2013, but failed to make any response to this request for ERISA Plan documents.

23. The Plan Administrator has never responded to the Plaintiff's second and third written requests for Plan documents.

24. The Plaintiff received an unofficial copy of the Policy from United of Omaha on March 28, 2013, as well as a claim form with which to file a death benefits claim.

4
Case 1:14-cv-00072-HSM-SKL   Document 1   Filed 03/10/14   Page 4 of 16   PageID #: 4

25. Still without the benefit of all necessary Plan documents, including the Plan itself, the Plaintiff filed an application for life insurance benefits under the Plan as a beneficiary of the Plan on May 1, 2013.

26. By letter dated May 9, 2013, United of Omaha denied Plaintiff's Life Insurance Benefits claim, citing to information contained in the Plan, but not contained in any documents yet provided to the Plaintiff.

27. By letter dated June 3, 2013 Plaintiff appealed United of Omaha's denial, once again requesting copies of all relevant Plan documents that continued to be withheld by the Defendants.

28. On July 12, 2013, United of Omaha responded to Plaintiff's request for Plan documents and provided an unofficial copy of additional Plan documents.

29. Upon receiving these additional Plan documents, Plaintiff became aware for the first time of the Plan contains a Continuation of Life Insurance During Total Disability provision ("Disability Continuation Provision") that extends eligibility under the Plan where the employee becomes totally disabled while eligible for benefits under the Plan.

30. Plaintiff wrote to United of Omaha on August 2, 2013 to make n supplemental claim for benefits due to Mr. Harris's continued eligibility under the Disability Continuation Provision.

31. By letter dated January 1, 2014 United of Omaha gave its final denial of Plaintiff's claim for Life Insurance Benefits.

32. In regards to the Disability Continuation Provision, the January 1, 2014 denial stated that, while Mr. Harris's health had declined before his death, he was not disabled when he last worked in September of 2011, and thereby denied his eligibility under the provision.

33. A plain reading of the Policy reveals that the relevant date for eligibility under the Disability Continuation Provision is not whether he was disabled as of the last day he worked, but whether he was disabled prior to the last day he was eligible for coverage under the Policy.

34. Upon information and belief, the hours worked by Mr. Harris during September 2011 provided life insurance eligibility for him through December 2011 and he had hours in his contribution bank that extended his eligibility under the Plan through January 31, 2012.

35. Mr. Harris was rendered unable to work and was totally disabled due to his acute kidney disease, hypertension, and cerebrovascular disease prior to the termination of his eligibility under the Plan, and continued to be disabled until these conditions caused his death.

36. In addition to the Disability Continuation Provision, the Plan contains a portability provision that allows the life insurance coverage under the Plan to be continued when coverage under the Plan ends. This provision requires the submission of an application and the payment of the first month's premium within 15 days of receiving written notice of the right to conversion, or 91 days of the end of coverage under the Plan, if no written notice was provided.

37. Mr. Harris was never informed, in writing or otherwise, by United of Omaha or the Plan Administrator that his coverage under the Plan would terminate at the end of January 2013 and that he could continue coverage through the portability provision in the Plan.

38. Both Defendants owed Plaintiff duties as fiduciaries of the ERISA Plan, including the duty of loyalty and a duty to communicate.

39. Both Defendants breached their fiduciary duties to Plaintiff, including the duty of loyalty and the duty to communicate.

40. United of Omaha would pay any benefits due under the terms of the Policy out of its own funds.

41. United of Omaha was under a perpetual conflict of interest because the benefits due under the Policy would have been paid out of its own funds.

42. United of Omaha allowed its concern over its own funds to influence its decision-making.

**<u>FIRST CAUSE OF ACTION</u>**
**<u>AGAINST ALL DEFENDANTS</u>**
**<u>FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)</u>**

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

43. Under the terms of the Plan and Policy, Defendants agreed to provide Mr. Harris's beneficiary, the Plaintiff, with life insurance benefits upon Mr. Harris's death.

44. There are two separate, independent, provisions of the life insurance policy that should provide coverage at the time of Mr. Harris's death; either Mr. Harris was covered under the conversion right in the policy, or he was covered under the Disability Continuation Provision.

45. Mr. Harris was owed benefits pursuant to the Policy's conversion right:

   45.1. The Policy had two requirements for the Policy to be converted: the payment of the first month's premiums, and the submission of a written application;

   45.2. Mr. Harris was never told the specific requirements of the Policy, nor provided an official written application form with which to apply for conversion by the Defendants;

   45.3. There is no standard form written application specified in the Policy or the Plan;

   45.4. Mr. Harris's continued payment of premiums is sufficient to fulfill both requirements of the Policy for conversion as it is a written statement

affirming a continued desire to be insured and includes the payment of that month's premium;

45.5. Mr. Harris's continued payment of premiums should be treated as his written application for an individual policy pursuant to the Policy's conversion right; and

45.6. Accordingly, Mr. Harris effectively converted the group Policy to an individual policy prior to death and thereby was eligible for benefits under that policy.

46. Mr. Harris was owed Plan benefits pursuant to the Disability Continuation Provision:

46.1. Mr. Harris was totally disabled prior to January 31, 2012 and continued to be disabled through his death on May 2, 2012;

46.2. Mr. Harris remained eligible for Plan benefits through the Disability Continuation Provision of the Policy; and

46.3. Mr. Harris died while eligible under the Policy and the Plaintiff is entitled to benefits under the terms of the Plan.

47. Defendants failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

48. The decisions to deny benefits were wrong under the terms of the Plan.

49. The decisions to deny benefits and decision-making processes were arbitrary and capricious.

50. The decisions to deny benefits were not supported by substantial evidence in the record.

51. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide life insurance benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

52. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

**SECOND CAUSE OF ACTION**
**EQUITABLE RELIEF AGAINST ALL DEFENDANTS**
**PURSUANT TO 29 U.S.C. §§ 1132(a)(3)**
**FOR BREACH OF FIDUCIARY DUTY IN**
**REGARDS TO FAILURE TO INFORM**

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

53. In the alternative, should benefits not be available to the Plaintiff under the terms of the Plan as set forth in Plaintiff's first cause of action, Plaintiff is entitled to a remedy for Defendants' breach of fiduciary duties.

54. Defendants United of Omaha and the Plan Administrator are fiduciaries of the Plan, and owe fiduciary duties to all Plan participants and beneficiaries, including the deceased and the Plaintiff.

55. Part of the fiduciary duties owed to Plan participants and beneficiaries is a duty to "convey complete and correct material information to a beneficiary," including a "duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know…." *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999).

56. Mr. Harris was never informed by either Defendant that his hours in his contribution bank had ended and that, therefore, the Defendants believed his coverage under the life insurance Plan had ended on January 31, 2012.

57. Mr. Harris was never informed that the written terms of the Plan required him to convert the Policy, or provided a specific method or timeline to do so to maintain eligibility for life insurance benefits.

58. The Defendants never told Mr. Harris, in writing or otherwise, that he was losing eligibility under the Policy, had lost eligibility, or had a right to continue eligibility through converting the Policy.

59. Mr. Harris had the right to convert the Policy to an individual policy up until at least the day before he died.

60. Upon information and belief, had Defendants informed Mr. Harris of his obligation to submit a written application along with the premiums that were being paid in order to convert the Policy to an individual policy, he would have done so.

61. Defendants breached their fiduciary duties to Mr. Harris and the Plaintiff by failing to inform Mr. Harris of material facts concerning the Plan which he did not know, and which he needed to know; specifically Defendants failed to inform the Plaintiff that they believed his coverage had lapsed and that he had a right to convert the policy.

62. ERISA § 502(a)(3) provides that a civil action may be brought:

(3) by a participant, beneficiary, or fiduciary
(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
    (B) **to obtain other appropriate equitable relief**
        (i) to address such violations or
        (ii) to enforce any provision of this subchapter or the terms of the plan…

63. Accordingly, § 502(a)(3) allows Plaintiff to bring a claim against Defendants for breach of fiduciary duty. As a result of Defendants' breach of fiduciary duty, Plaintiff is entitled to recover appropriate equitable relief.

64. Relief in the form of monetary compensation – sometimes called a "surcharge" – for a loss resulting from the Defendants' breach of duty may be awarded under section 502(a)(3). *See Cigna Corporation, et al. v. Amara et al.*, 131 S. Ct. 1866, 1880 (2011) ("The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.").

65. A fiduciary under ERISA can be surcharged under § 502(a)(3) upon a showing of actual harm by the plan participant or beneficiary.

66. As a direct result of Defendants' breach of their fiduciary duties, Plaintiff, as designated beneficiary of the Plan, suffered actual harm.

## THIRD CAUSE OF ACTION
## FOR EQUITABLE RELIEF AGAINST ALL DEFENDANTS
## PURSUANT TO 29 U.S.C. §§ 1132(a)(3)
## FOR BREACH OF FIDUCIARY DUTY IN
## MATERIALLY MISLEADING PLAN PARTICIPANTS AND BENEFICIARIES

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

67. In the alternative, should benefits not be available to the Plaintiff under the terms of the Plan as set forth in Plaintiff's first cause of action, or be entitled to a remedy for Defendants' breach of fiduciary duties as set forth in the second cause of action, Plaintiff is entitled to a remedy for Defendants' further breach of fiduciary duties.

68. Defendants United of Omaha and the Plan Administrator are fiduciaries of the Plan, and owe fiduciary duties to all Plan participants and beneficiaries, including the deceased and the Plaintiff.

69. A "fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Krohn*, 173 F.3d, at 547.

70. "Once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire." *Id*.

71. Mr. Harris's premiums under the Policy continued to be paid beyond when his eligibility purportedly ended.

72. Defendants continued to accept premium payments for the Policy well after the date they now claim Mr. Harris became ineligible for benefits, and did not refund these payments or inform Mr. Harris that coverage under the Policy had, in their view, come to an end.

73. Defendants were put on notice that Mr. Harris was unaware of vital information regarding his eligibility for continued benefits each time they received a premium payment for Mr. Harris's Plan.

74. Defendants were aware that their silence would be harmful to the Mr. Harris and the Plaintiff.

75. Defendants breached their fiduciary duties to Mr. Harris and the Plaintiff by misleading Mr. Harris into believing he had continued coverage by continuing to accept premiums after they had decided he was ineligible for benefits.

76. As a direct result of Defendants' breach of their fiduciary duties, Plaintiff, as designated beneficiary of the Plan, suffered actual harm.

# FOURTH CAUSE OF ACTION
# PENALTY FOR FAILURE TO PROVIDE PLAN DOCUMENTS
# PURSUANT TO 29 U.S.C. § 1132(c), ERISA § 502(c)
# AGAINST BOARD OF TRUSTEES, MID-SOUTH CARPENTERS
# REGIONAL COUNCIL HEALTH AND WELFARE FUND

Plaintiff incorporates the allegations contained in the previous paragraphs as if fully stated in this cause of action and says further that:

77. Despite three individual requests, all citing to ERISA §502(c), 29 USC § 1132(c), and specifically informing the Plan Administrator that this statute requires production of documents and allows for a penalty of up to $110.00 per day for failure to comply with a request for documents, Defendant Plan Administrator refused to provide the requested documents, in violation of ERISA.

78. As ERISA fiduciaries, the Plan Administrator was responsible for providing timely, accurate and complete information and documents to Plaintiff.

79. The Plan Administrator failed to provide all relevant Plan documents within 30 days.

80. The Plan Administrator has never provided the relevant ERISA Plan documents.

81. Pursuant to 29 U.S.C. § 1132 (c), Defendant Plan Administrator Board of Trustees, Mid-South Carpenters Regional Council Health and Welfare Fund is liable to Plaintiff for penalties in an amount up to $110.00 per day from January 5, 2013, thirty days after the date of Plaintiff's first request for the Plan documents.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action:**

1. A finding in favor of Plaintiff against all Defendants;

13
Case 1:14-cv-00072-HSM-SKL   Document 1   Filed 03/10/14   Page 13 of 16   PageID #: 13

2. Damages in the amount equal to the life insurance benefits to which she was entitled through the date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is entitled to benefits under the Plan or under any other employee welfare benefit plan;

5. Plaintiff's reasonable attorney fees and costs; and

6. Such other relief as this court deems just and proper.

**Plaintiff's Second and Third Causes of Action:**

7. A finding in favor of Plaintiff against all Defendants;

8. A finding that Defendants are estopped from enforcing the terms of the Plan as written as pertains to Plaintiff's eligibility, due to their misrepresentations and failure to inform and misleading the participant and beneficiary about the terms of the Plan;

9. Reformation of the terms of the Plan to allow Mr. Harris to have the coverage he enrolled in and paid were premiums for, as an equitable remedy for Defendants' breach of their fiduciary duties;

10. Damages in the amount equal to the amount of unpaid benefits due under the terms of the Plan, either as a "surcharge" pursuant to ERISA § 502(a)(3) or under the reformed terms of the Plan under ERISA § 502(a)(1)(B) pursuant to *Cigna Corporation, et al. v. Amara et al.*, 131 S. Ct. 1866, 1880 (2011), or such other equitable remedy as the court should find proper;

11. Damages in the amount of profits Defendants have earned on the money wrongfully withheld from Plaintiff, as disgorgement of unjust enrichment.

12. Prejudgment and postjudgment interest;

14

Case 1:14-cv-00072-HSM-SKL   Document 1   Filed 03/10/14   Page 14 of 16   PageID #: 14

13. An Order requiring Defendants to pay any other benefits available under the Plan or available by operation of other employee benefit plans, to the extent applicable;

14. Plaintiff's reasonable attorney fees and costs pursuant to ERISA § 502(g); and

15. Such other relief as this court deems just and proper.

**On Plaintiff's Fourth Cause of Action:**

16. A penalty from Defendant Plan Administrator Board of Trustees, Mid-South Carpenters Regional Council Health and Welfare Fund, of an amount representing up to $110 per day from January 5, 2012 through such time the entire ERISA record is provided to Plaintiff as required under 29 C.F.R. §2560.503-1(g)(1), and pursuant to 29 U.S.C. § 1132(c)(1);

17. An order from the Court that the Plan Administrator provide a copy of the official version of the plan documents, including the plan itself, as well as any summary plan description, insurance policy, or other documents under which the Plan was operated.

18. Plaintiff's reasonable attorney fees and costs;

19. Prejudgment and postjudgment interest; and

20. Such other relief as this court deems just and proper, including, but not limited to, limiting the documents that the Defendants may rely on to those documents provided to the Plaintiff prior to the filing of this suit.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 10th day of March, 2014.

        Respectfully submitted,

        ERIC BUCHANAN & ASSOCIATES, PLLC
        ATTORNEYS FOR PLAINTIFF


       BY: */s Eric L. Buchanan*
          Eric L. Buchanan (#018568)
          Hudson T. Ellis (#028330)
          414 McCallie Avenue
          Chattanooga TN 37402
          (423) 634-2506
          FAX: (423) 634-2505