UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MEAGAN HARRIS-FRYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14-cv-72-HSM-SKL |
| | ) | |
| UNITED OF OMAHA LIFE INSURANCE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Meagan[1] Harris-Frye ("Plaintiff") brought this action under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101, *et seq*., against Defendant

Board of Trustees, Mid-South Carpenters Regional Council Health and Welfare Fund

("Defendant Board of Trustees") and Defendant United of Omaha Life Insurance Company

("Defendant United"; and collectively with Defendant Board of Trustees, "Defendants").

Plaintiff seeks (a) benefits under 29 U.S.C. § 1132(a)(1)(B) on an insurance policy on the life of

her late father (Count I); (b) alternatively, equitable relief against Defendant Board of Trustees

for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) for allegedly misleading her father on

whether his life insurance policy was still in force (Count III); (c) statutory penalties against

Defendant Board of Trustees under 29 U.S.C. § 1132(c)(3) for failing to provide documents to

---

[1] Plaintiff's first name is spelled at various times in pleadings and supporting documents as both
"Meagan" and "Maegan."

Plaintiff within the time required by ERISA (Count IV); and (d) prejudgment interest, post-judgment interest, attorney fees, and costs [Doc. 1 at Page ID # 7-15].[2]

Plaintiff has moved for judgment on the administrative record on Count I and for summary judgment on Counts III and IV [Doc. 40] and filed a memorandum in support [Doc. 41]. Defendant Board of Trustees has moved for summary judgment on all claims [Doc. 37] and filed a memorandum in support [Doc. 38]. Defendant United has moved for judgment on the administrative record on Count I, the only claim directed to it [Doc. 21], and filed a memorandum in support [Doc. 22]. This matter is now ripe.

For the reasons stated below, I **RECOMMEND** that:

(1) Plaintiff's motion for summary judgment [Doc. 40] be **GRANTED IN PART** to the extent it seeks statutory penalties of $12,760.00 under 29 U.S.C. § 1132(c)(3) and **DENIED IN PART** to the extent it seeks additional penalties under 29 U.S.C. § 1132(c)(3) and relief under 29 U.S.C. § 1132(a)(3);

(2) Defendant Board of Trustees' motion for summary judgment [Doc. 37] be **GRANTED IN PART** to the extent it seeks judgment on Plaintiff's claim for relief under 29 U.S.C. § 1132(a)(3) and **DENIED IN PART** to the extent it seeks judgment on Plaintiff's claim for statutory penalties under 29 U.S.C. § 1132(c)(3);

(3) Defendant United's motion for judgment on the administrative record [Doc. 21] be **DENIED**; and

---

[2] The parties have stipulated that Plaintiff's third and fourth causes of action are directed only to Defendant Board of Trustees [Doc. 36 at Page ID # 1254]. Plaintiff has withdrawn her second cause of action [Doc. 45 at Page ID # 1623].

(4)     Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) be

**REMANDED** for a determination of whether the insured was totally

disabled as defined by the relevant policy on January 31, 2012.

## I.     FACTS

For purposes of the pending motions, different parties have agreed to the accuracy of different sets of facts. Plaintiff and Defendant Board of Trustees have filed a Joint Statement of Undisputed Facts (the "Joint Statement") in support of their respective motions for summary judgment [Doc. 39]. Defendant United did not file a motion for summary judgment and did not join in the Joint Statement [Doc. 39 at Page ID # 1327-28]. Defendant United instead relies only on the Administrative Record [Docs. 18, 32], but also does not dispute those facts in the Joint Statement that are supported by citations to the Administrative Record [Doc. 39 at Page ID # 1327-28]. Because different parties have agreed to different but overlapping sets of facts, citations below are to both the Joint Statement ("JS") and the Administrative Record ("AR"), as appropriate. Significantly, however, there is no genuine dispute as to any *material* fact that would prevent resolution of the pending motions.

### A.     The Plan

The ERISA plan at issue is the Mid-South Carpenters Regional Council Health & Welfare Fund (the "Plan")[3] (JS ¶ 1). The Plan covers union employees in the carpenter and millwright construction industries in Tennessee and Alabama (JS ¶ 2). Participating employers make contributions on behalf of their employees at a rate per hour worked set out in various

---

[3] The three documents potentially governing life insurance benefits under the Plan are the Policy (AR 1-55), the Plan Document [Doc. 39-2], and the Summary Plan Description ("SPD") (AR 202-96). Perhaps for strategic reasons related to Plaintiff's claim for penalties under 29 U.S.C. § 1132(c), Plaintiff cites to the Plan Document where possible, while Defendant Board of Trustees focuses on the SPD. Regardless, Plaintiff concedes the Plan Document does not specifically provide for life insurance benefits [Doc. 45 at Page ID # 1619 n.2].

collective bargaining agreements, and those contributions earn eligibility for the relevant employees (JS ¶ 2; AR 229-34). For example, contributions of at least $500.00 during the month of September earn eligibility for Plan coverage through December of that year (AR 231). Contributions in excess of $550.00 per month go into an employee's "contribution bank" for possible future use (AR 231).

The Plan provides medical and prescription benefits on a self-insured basis (JS ¶ 4). The Plan provides group life insurance benefits on a fully insured basis through a policy issued by Defendant United to Defendant Board of Trustees, identified as Group Life and Accidental Death and Dismemberment Benefits Policy No. GLUG-AIBT (the "Policy") (JS ¶ 4; AR 1-55, 249). The Policy provides a basic life insurance benefit of $20,000.00 (JS ¶ 9; AR 3, 11). Plan participants may buy additional coverage under the Policy by paying an individual premium (JS ¶ 9).

Defendant Board of Trustees is the Plan Administrator (JS ¶ 1; AR 293). Non-party Southern Benefit Administrators ("SBA") administers the Plan on Defendant Board of Trustees' behalf (JS ¶ 3; AR 293). Defendant United is the claims administrator for the Policy (AR 301).

The SPD states that every notice of an adverse benefit determination will "set forth, in a manner calculated to be understood by the claimant . . . [a] description of the Plan's review procedures and the time limits applicable to such procedures" (AR 216). The SPD further describes the Plan's appeal procedures as follows under the heading "CLAIMANT'S RIGHT TO APPEAL AN ADVERSE BENEFIT DETERMINATION":

> A claimant whose claim for benefits has been denied under the terms of the Plan and to whom a notice of adverse benefit determination has been issued in accordance with the preceding section will have the right to appeal the adverse benefit determination and will be entitled to a full and fair review of the decision by the Board of Trustees, or by a committee appointed by

4

them. The procedures by which the claimant may appeal the adverse benefit determination and will receive a full and fair review of the claim are as described below. The procedures will:

1. Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination in which to appeal the determination;

2. Provide for an independent review by the Board of Trustees, or their committee. The review will not be conducted by the individual who made the adverse benefit determination that is the subject of the appeal, nor by the subordinate of such individual….

(JS ¶ 32; AR 217).

Under the heading "NOTICE OF TRUSTEES' DECISION," the SPD states that "The Board of Trustees, or their committee, will review all appeals in accordance with the following and will notify the claimant as indicated," followed by numbered headings for "Urgent Care Claims," "Non-Urgent Care Claims," and "Post-Service Claims" (AR 218-19). There is no section addressing the review to be given to life insurance claims (*id.*). The SPD further states that "[e]very participant and beneficiary will be required to exhaust each and every step of these Appeal Procedures before he proceeds to litigation, and any attempt to circumvent these Appeal Procedures in any manner will be resisted by the Trustees" (JS ¶ 32; AR 220).

### B. Options for Continuation of Plan Life Insurance Coverage

The Plan eligibility of an employee whose employment ends is automatically extended if the employee has accumulated enough extra hours in his or her "contribution bank" (*see* JS ¶ 12; AR 231). After all such hours are exhausted, a participant may continue medical and prescription benefits through COBRA, but life insurance benefits must be handled separately (JS ¶ 17; AR 242-43, 245). As stated in the SPD, "Life Insurance is not provided to Eligible Employees whose coverage is being extended under the COBRA continuation of coverage provisions" (AR 245).

5

There are two basic avenues through which a participant's life insurance coverage may continue after his or her eligibility otherwise ends. First, a participant may elect to continue life insurance coverage through the conversion or portability provisions outlined in the Policy or the SPD (JS ¶ 19, AR 17-19, 26-27, 246-47). Second, a participant's life insurance will be continued without the payment of premiums if the participant becomes totally disabled (the "Disability Continuation Provision") (AR 17-18, 247-48). The SPD describes the Disability Continuation Provision, in pertinent part, as follows:

> If you become totally disabled as defined below, your life insurance will be continued without payment of premium provided:
>
> 1. The disability began while you were insured under this provision . . . .
>
> As used in this section, total disability and totally disabled mean, because of an injury or sickness, that you are completely and continuously unable to perform any work or engage in any occupation for which you are reasonably fitted by training, education or experience.

(AR 247-48). The Policy describes the Disability Continuation Provision, in pertinent part, as follows:

> You may be able to continue life insurance under this provision without payment of premium if You become Totally Disabled while insured under the Policy prior to age 60.

(AR 17). "Totally Disabled" means that

> because of an Injury or Sickness You are completely and continuously unable to perform any work or engage in any occupation for which You are reasonably fitted by training, education or experience.

(AR 40).

6

### C.  Mr. Harris's Life Insurance Coverage

Plaintiff's father, Rusty Harris ("Mr. Harris"), was a participant in the Plan based on his union membership and his employment with various contributing employers (JS ¶ 5; AR 362-63).  Mr. Harris elected to purchase the optional additional life insurance coverage for a total benefit under the Policy of $100,000.00 (JS ¶ 9).  Mr. Harris had his life insurance premiums automatically deducted from the bank account of his mother, Mary Hood ("Ms. Hood"), on a monthly basis (JS ¶ 9; AR 284-303).  Plaintiff is the only beneficiary named on Mr. Harris's life insurance enrollment form[4] (JS ¶ 10; AR 362-63).

Mr. Harris was laid off from his employment with a contributing employer in October 2011 (JS ¶ 11).  The hours Mr. Harris had worked during September 2011 provided him with eligibility under the Plan through December 2011, and the extra hours in his contribution bank extended his eligibility through January 31, 2012 (JS ¶ 12).

On January 19, 2012, SBA sent a packet of COBRA information to Mr. Harris (JS ¶¶ 14-15).  Mr. Harris signed and returned a COBRA election form, dated February 27, 2012, to continue his medical and prescription benefits (JS ¶ 16).  Defendant Board of Trustees never received a communication from Mr. Harris indicating that he wanted to convert his life insurance coverage (JS ¶ 20).

Mr. Harris's eligibility under the Plan terminated at midnight on January 31, 2012 (JS ¶ 13; AR 328).  Life insurance premiums continued to be deducted from Ms. Hood's bank account after Mr. Harris's eligibility under the Plan terminated.  These payments were deducted

---

[4] The cited form actually identifies Plaintiff as Mr. Harris's only dependent and does not name a beneficiary (AR 362-63).  The parties, nevertheless, have not questioned Plaintiff's status as the beneficiary of the Policy if Mr. Harris did, in fact, have coverage.

on February 17, 2012, March 21, 2012, April 24, 2012, and May 25, 2012,[5] and were reimbursed to Ms. Hood on August 27, 2012 (JS ¶¶ 21-22; AR 190, 192, 194, 196).

**D.  Mr. Harris's Death**

Mr. Harris died on May 2, 2012 (JS ¶ 23; AR 337).  His death certificate indicates acute kidney disease as the immediate cause of death and chronic kidney disease as one of the conditions leading to his death (AR 337).

**E.  Plaintiff's Requests for Documents**

After Mr. Harris's death, Ms. Hood contacted SBA to inquire about his life insurance benefits under the Plan (JS ¶ 25).  She was informed that Mr. Harris was not eligible for life insurance benefits at the time of his death (*id.*).

On September 7, 2012, Ms. Hood wrote a letter to SBA requesting the following documents:

> 3. A certified copy of the life insurance policy;
>
> 4. Any and all documents, including any Cobra, ERISA, or other plan documents, which support your contention that the life insurance policy was not in effect despite the premiums being timely paid; and
>
> 5. A copy of all plan documents and information.

(JS ¶ 45).  In response, SBA sent Ms. Hood a copy of the SPD and a copy of an insurance application[6] (JS ¶ 46).

**1.  Plaintiff's First Request**

Plaintiff, through counsel, wrote a letter (the "First Request") to Defendant Board of Trustees regarding Mr. Harris's life insurance benefits on December 4, 2012 (JS ¶¶ 26, 47; AR

---

[5] The final deduction was made after Mr. Harris's death.

[6] It is unclear what document is meant by the "insurance application."

Case 1:14-cv-00072-HSM-SKL   Document 52   Filed 06/01/15   Page 8 of 35   PageID #: 1681

367-72). SBA received the First Request on behalf of Defendant Board of Trustees on December 6, 2012 (JS ¶ 26). The First Request asked for the following documents:

1. A copy of the life insurance policy that applies to this claim.
2. Additionally, if there are any other ERISA plan documents that control this claim, **other than the SPD**, we request a copy of those plan documents; if there are no other such documents, please so state. . . .
3. Please provide a copy of any other relevant documents (as defined in the ERISA claims regulations in 29 C.F.R. § 2560.503-1) concerning this claim.

(JS ¶ 48; AR 368) (emphasis added). The First Request included a paragraph in bold font describing the plan administrator's duty to provide documents within 30 days after receiving a request to avoid statutory penalties of up to $110.00 per day (JS ¶ 49; AR 369).

On January 9, 2013, Treva Garrison, Assistant Branch Manager at SBA, called Plaintiff's counsel and left a voicemail for Jessica Geselbracht, a secretary in Plaintiff's counsel's office (JS ¶ 28). On January 14, 2013, Ms. Garrison sent a letter to Plaintiff's counsel on behalf of Defendant Board of Trustees (JS ¶¶ 7, 29, 51, 52). Ms. Garrison's response enclosed two pages and the cover page of the SPD[7] (JS ¶¶ 29, 51, 52).

### 2. Plaintiff's Second Request

On March 14, 2013, Plaintiff's counsel sent a letter (the "Second Request") noting that Defendant Board of Trustees had not provided the full SPD (JS ¶¶ 55-56; AR 351-57). The Second Request stated, in part, as follows:

Your letter of January 14, 2013 fails address [sic] the other questions we raised and requests we made. . . . You have an

---

[7] A telephone call also took place between Ms. Garrison and Ms. Geselbracht on January 14, 2013 (JS ¶ 53). Defendant Board of Trustees alleges Ms. Geselbracht told Ms. Garrison that it would be a sufficient response if Ms. Garrison sent only the portion of the SPD stating that a COBRA election makes a participant ineligible for life insurance (*id.*). Plaintiff disputes this, supplying an affidavit of Ms. Geselbracht stating she never told Ms. Garrison the information Ms. Garrison proposed to send would be sufficient [Doc. 45 at Page ID # 1631 n.7; Doc. 45-1 at Page ID # 1638].

obligation to provide those ERISA plan documents under ERISA § 502(c) (29 U.S.C. § 1132(c)), and since those were not provided within 30 days of the written request on behalf of our client, you can face penalties under that statute of up to $110 per day for each failure to provide those documents.

Again, *please consider this letter to be another request for those same documents*, including the life insurance policy that applies to this claim, any other plan documents that apply to the claim, and any other documents that you contend control the terms of the life insurance plan or claim.

. . .

Further, we requested the documents relevant to this claim. Your one page letter and one page attachment failed to do so. Please review the requirements of the ERISA regulations, found at 29 C.F.R. § 2560.503-1(m)(8) for a full description of what documents are "relevant." In essence, it is all the documents you have received, generated, considered, or have relevant to this claim, in addition to other requirements.

(JS ¶ 57; AR 352-53) (emphasis added). SBA received the Second Request on behalf of

Defendant Board of Trustees on March 18, 2013 (JS ¶ 58).

On March 26, 2013, Ms. Garrison received an email from Karen Barajas, an employee of

Defendant United, which stated as follows:

I've received another letter from Eric Buchanan, the attorney for Maegan Harris Frye, regarding life insurance benefits for Rusty Harris.

I think that the only way to settle the issue is to let Ms. Harris Frye file a life claim. I agree that Mr. Harris does not appear to be eligible for life insurance coverage, however, if we receive a claim and it is formally denied, Mr. Buchanan can follow our Appeal process and we will both be out of the claim.

(JS ¶ 59; AR 339). Ms. Garrison replied:

I received another letter as well. I was going to respond to them but I agree this way they can appeal. I will get all the information together and get it to you.

(JS ¶ 60; AR 339).  The parties do not point to any further action by SBA or Defendant Board of Trustees in response to the Second Request.

### 3. Plaintiff's Third Request

A month and a half after the Second Request, on April 29, 2013, Plaintiff's counsel sent a letter (the "Third Request") addressed to the Plan Administrator and to Ms. Garrison individually[8] (JS ¶ 61; AR 310-11).  The Third Request stated that Plaintiff had received a copy of the Policy from Defendant United (AR 311).  The date on which Plaintiff received the Policy is not stated in the Third Request.  Defendant United's letter enclosing the Policy, however, was dated March 28, 2013, and indicates that a copy was sent to SBA (AR 342-43).

The Third Request noted that the Policy referred to the Plan's Rules of Eligibility and continued:

> Presumably, these "Rules of Eligibility" would be in the Plan documents we have previously requested from you; however, if they are not, please consider this as a request for those documents.
>
> Also, please consider this a third request for the other ERISA plan documents and other documents controlling the life insurance plan that we have previously requested on December 4, 2012 and March 14, 2013, as well as our request for a proper decision on this claim and the other information we previously requested.

(JS ¶ 61; AR 310-11).  The Third Request also discussed the potential applicability of the Disability Continuation Provision (AR 311).

Neither Defendant Board of Trustees nor SBA responded to the Third Request (JS ¶ 66).

### 4. Document Requests and Production During the Litigation

On August 7, 2014, Defendant Board of Trustees provided Plaintiff with complete copies of the SPD and the Policy as part of its initial disclosures in this litigation (JS ¶ 68).

---

[8] The copy to Ms. Garrison was received on April 30, 2013, and the copy to the Plan Administrator was received on May 1, 2013 (JS ¶¶ 64, 65).

On August 26, 2014, Plaintiff served Interrogatories and Requests for Production on Defendant Board of Trustees seeking the identification and production of all documents related to Plaintiff's claim that had not yet been produced by one of the Defendants (JS ¶¶ 70-71). Defendant Board of Trustees did not identify or produce the Plan Document (JS ¶¶ 70, 72).

Plaintiff first learned of the existence of the Plan Document while taking the first of three depositions on December 10, 2014 (JS ¶ 74). Defendant Board of Trustees provided Plaintiff with a copy of the Plan Document before the last deposition on that day (JS ¶ 77).

### F.     Plaintiff's Claim

On May 1, 2013, two days after sending the Third Request, Plaintiff sent a signed Proof of Death Claim form (the "Claim Form"), dated April 30, 2013, to Defendant United (JS ¶¶ 30, 61; AR 303-05, 334). The box for "No" is checked in answer to the question "Was the employee/member disabled?" on the Claim Form (AR 304).

Defendant United denied the claim on May 9, 2013 (JS ¶ 31; AR 327-29). The denial letter stated that Mr. Harris's eligibility ended as of January 31, 2012, and that Defendant United had not received a portability application from Mr. Harris (AR 328). The denial letter stated in part as follows regarding Plaintiff's appeal rights:

> In the event you wish to appeal this denial, you have the right to request a review by the Group Life Claims Department. This request for an appeal must be submitted within 60 days from receipt of this notice. . . .

> If the plan is governed by the Employee Retirement Income Security Act (ERISA), you have the right to bring a civil action suit once all administrative rights to review have been exhausted.

(AR 328-29).

Plaintiff appealed the denial by letter to Defendant United on June 3, 2013 (AR 306-07). Plaintiff later submitted medical records of Mr. Harris to Defendant United on October 3, 2013,

for consideration under the Disability Continuation Provision (AR 81-168). Plaintiff requested

an extension of 60 days to submit additional medical information, and Defendant United granted

a shorter extension to November 25, 2013 (AR 81, 394-95).[9]

On October 14, 2013, Defendant United referred Mr. Harris's medical records to Stuart

Schlanger, M.D., to "review and advise if records support [Mr. Harris] was totally disabled, as

defined by the policy, prior to his death on May 2, 2012" (AR 408-09). On October 16, 2013,

Defendant United added a comment stating

> An employee has to stop working due to total disability in order to
> be eligible for waiver. They can't be terminated for another reason
> and then become disabled later. Please indicate whether or [sic]
> the disability was supported as of September 2011.

(AR 408).

Dr. Schlanger's October 25, 2013 response included the following conclusions:

> The records support that he was able to work throught [sic] at least
> 8/23/11 at his own occupation
>
> However after this date, he had recurrent medical issues which
> limited his ability to work
>
> By 2/23/12 his severity of acute illness' [sic] increased with acute
> confinements and ultimately his demise
>
> He was disabled from any work by 2/23/12

(AR 410).

On January 28, 2014, United denied Plaintiff's appeal (JS ¶ 31; AR 405-07.) The appeal

denial letter stated as follows regarding the applicability of the Disability Continuation

Provision:

---

[9] Plaintiff and Defendant United exchanged other correspondence during the appeal process, including additional requests for Plan documents and eligibility information, an earlier request for an extension, and a discussion of the significance of the continued premium withdrawal after Mr. Harris's eligibility ended on January 31, 2012 (*see, e.g.,* AR 173-97, 301-02, 394-95).

The policy does contain a Continuation of Life Insurance During Total Disability provision. ***In order to be eligible under this provision, an employee must stop working due to total disability as defined by the policy.*** However, based on the information in file, Mr. Harris ceased working due to unemployment and/or reduced employment, as indicated by extension of coverage through the contribution bank, and not as a result of any functional deficits in September 2011. . . . ***Although his status declined shortly before his death, the records do not support he was unable to work due to any functional impairment on a continuous and uninterrupted basis as of September 2011 until his death in May 2012, as required by the policy.***

(AR 406) (emphasis added). The letter continued:

> ***At this time, you have exhausted all administrative rights to appeal.*** No further reviews of the claim will be conducted by United of Omaha, and the claim will remain closed. This claim determination reflects an evaluation of the claim facts and policy provisions. United of Omaha has conducted a full and fair review of the appeal, and based on the documentation in file, it has been determined the denial of benefits will be maintained. . . .
>
> ***If the plan is governed by the Employee Retirement Income Security Act (ERISA), you have the right to bring a civil action suit once all administrative rights to review have been exhausted.*** You and the plan may have other voluntary dispute resolution options available, such as mediation. One way to find out what options may be available is the [sic] contact the local U.S. Department of Labor Office and your state insurance regulatory agency.

(AR 407) (emphasis added). The letter makes no reference to Defendant Board of Trustees or any other appeal rights or requirements, other than the reference to possible voluntary dispute resolution options.

Defendant Board of Trustees has not reviewed Plaintiff's claim, and Plaintiff has never requested that Defendant Board of Trustees do so (JS ¶ 33). Neither Defendant Board of Trustees nor SBA was involved in Defendant United's denial of Plaintiff's claim (JS ¶ 31).

14

## II. STANDARD OF REVIEW

### A. Standard for Judgment on the Administrative Record

The parties have stipulated that Plaintiff's first cause of action, which seeks benefits under 29 U.S.C. § 1132(a)(1)(B), is subject to the arbitrary-and-capricious standard of review [Doc. 36 at Page ID # 1254]. If it is possible to offer a "reasoned explanation" for a decision, based on all the evidence known to the administrator, then the decision is not arbitrary and capricious. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2000). This standard is not demanding, but neither is it toothless. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169, 172 (6th Cir. 2003) (quoting *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 2001)). Courts must scrutinize the decision to determine whether, "substantively or procedurally, [the plan administrator] has abused his discretion." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). In other words, the administrator's decision will be upheld only "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) *aff'd* 554 U.S. 105 (2008). It is the claimant's "burden to show that he was entitled to the 'benefits . . . under the terms of his plan.'" *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992) (citing 29 U.S.C. § 1132(a)(1)(B)).

### B. Standard for Summary Judgment

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material.

*Anderson*, 477 U.S. at 248. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *see also Jones v. Sandusky County, Ohio*, 541 F. App'x 653, 659 (6th Cir. 2013); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907. A mere scintilla of evidence is not enough to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jones*, 541 F. App'x at 659. The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.* In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion;

16

(3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order."   Fed. R. Civ. P. 56(e).

## III.   ANALYSIS

Plaintiff seeks judgment on the administrative record on her claim for benefits and summary judgment on her breach of fiduciary duty and statutory penalty claims [Doc. 40]. Defendant Board of Trustees has moved for summary judgment on all claims [Doc. 37]. Defendant United has moved for judgment on the administrative record on Plaintiff's claim for benefits [Doc. 21].

### A.   Count I: Plan Benefits under 29 U.S.C. § 1132(a)(1)(B)

#### 1.   Exhaustion of Remedies

Defendant Board of Trustees argues Plaintiff failed to exhaust her administrative remedies and the Court therefore lacks jurisdiction over Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) [Doc. 38 at Page ID # 1268].   Defendant Board of Trustees relies on the fact that the SPD allows 180 days to appeal an adverse benefit decision and contains a statement that "[e]very participant and beneficiary will be required to exhaust each and every step of these Appeal Procedures before he proceeds to litigation" [Doc. 38 at Page ID # 1269 (quoting AR 323, 325)].   Among other arguments in response, Plaintiff points out that the letter from Defendant United denying Plaintiff's appeal told Plaintiff her administrative appeal rights were exhausted [Doc. 45 at Page ID # 1618 (citing AR 407)].

"Every employee benefit plan covered by ERISA is required to 'afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim.'" *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (quoting 29 U.S.C. § 1133).   The Sixth Circuit has "held

that '[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.'" *Id.* (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).   Exhaustion of administrative remedies "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist [the] court in reviewing the fiduciaries' actions.'"  *Id.* (quoting *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000)).   Whether to apply the exhaustion requirement is committed to the district court's sound discretion.  *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991).

ERISA's implementing regulations require that a plan administrator's notice of adverse benefit determination inform the recipient of the requirements to appeal:

> The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> . . .
>
> [a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1(g)(1)(iv).   If a plan fails to establish or follow claims procedures consistent with these regulations, a claimant is "deemed to have exhausted the administrative remedies available under the plan."  29 C.F.R. § 2560.503-1(l); *see also Scott v. Regions Bank*, 702 F. Supp. 2d 921, 933 (E.D. Tenn. 2010) (appeal rights deemed exhausted where denial letter did not describe review process and indicated matter was closed); *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324 (2d Cir. 2004) (administrator was precluded from raising exhaustion defense after sending plan booklet containing appeal procedures, but when denial letter enclosing the booklet made no reference to appeal procedures or specific booklet pages); *Conley v. Pitney Bowes*, 34 F.3d 714, 717-18 (8th Cir. 1994) (excusing claimant's failure to

exhaust on contract principle of condition precedent where administrator failed to perform requirement set out in plan document to inform claimant of appeal procedures).

The letter from Defendant United denying Plaintiff's claim told Plaintiff "[i]n the event you wish to appeal this denial, you have the right to request a review by the Group Life Claims Department" (AR 328). Plaintiff followed this procedure. The letter from Defendant United denying Plaintiff's appeal told Plaintiff that "[a]t this time, you have exhausted ***all administrative rights to appeal***" and that "[i]f the plan is governed by . . . ERISA . . . , you have the right to bring a civil action once all administrative rights to review have been exhausted" (AR 407) (emphasis added). The appeal denial letter made no reference to Defendant Board of Trustees or any further appeal options, other than possible voluntary dispute resolution options (*id.*)

Neither letter informed Plaintiff of the additional level of administrative review that Defendant Board of Trustees now contends was required for exhaustion. Defendant Board of Trustees thus failed to satisfy the requirement in 29 C.F.R. § 2560.503-1(g)(1)(iv) that a denial notice describe the Plan's review procedures, and Plaintiff should be deemed to have exhausted the administrative remedies available. *See* 29 C.F.R. § 2560.503-1(l); *see also Scott*, 702 F. Supp. 2d at 933. Defendant Board of Trustees' failure to satisfy its own requirement in the SPD to describe review procedures in any notice of an adverse benefit determination (AR 216) provides additional grounds for deeming Plaintiff to have exhausted her administrative remedies. *See Conley*, 34 F.3d at 717-18. I, therefore, **CONCLUDE** that Plaintiff has exhausted her administrative remedies.

## 2.      Proper Defendants

Defendant Board of Trustees argues it is not a proper party to Plaintiff's claim for benefits because it did not review an appeal of Plaintiff's claim and because any benefits under the Policy would have been payable only by Defendant United [Doc. 38 at Page ID # 1270].  In response, Plaintiff points both to the ERISA statute and to Defendant Board of Trustees' own argument that it should have had the chance to review Plaintiff's claim for benefits before Plaintiff filed suit [Doc. 45 at Page ID # 1620-21].

An employer is not a proper defendant in an action concerning benefits unless the employer "is shown to control administration of [the] plan."  *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) ("[a]n employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims").

Defendant Board of Trustees itself relies on the provision in the SPD requiring appeals under the Plan to be conducted by it [Doc. 43 at Page ID # 1592 (citing JS ¶¶ 32, 33; AR 217)]— a provision that would be meaningless if Defendant Board of Trustees did not control administration of the Plan.  Defendant also, as Plaintiff points out, states repeatedly that it should have been given the opportunity to review Plaintiff's claim before suit was brought [Doc. 38 at Page ID # 1268-69; Doc. 43 at Page ID # 1591-92; Doc. 46 at Page ID # 1642].  Defendant Board of Trustees argues that Plaintiff's failure to appeal to it denied it "the opportunity to efficiently manage its funds, correct any errors, [and] interpret plan provisions" [Doc. 38 at Page ID # 1269], which further supports that Defendant Board of Trustees has the ability to control the administration of the Plan.  I, therefore, **CONCLUDE** that Defendant Board of Trustees has

been shown to control administration of the plan such that it is a proper party defendant to Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B).

### 3. Entitlement to Benefits

Mr. Harris submitted a COBRA election form before his eligibility ended, but Defendants never received an application for conversion or portability of Mr. Harris's life insurance coverage (JS ¶¶ 16, 20). The only method by which Plaintiff may be entitled to benefits under 29 U.S.C. § 1132(a)(1)(B), therefore, is the Disability Continuation Provision.

The parties disagree on the date on which Mr. Harris must have been totally disabled in order for the Disability Continuation Provision to apply. Defendant United alleged when it denied Plaintiff's appeal, and continues to allege now, that the relevant date is the end of Mr. Harris's employment in September 2011 [Doc. 22 at Page ID # 537, 539; Doc. 44 at Page ID # 1610 (quoting AR 405-06)]. Plaintiff alleges the relevant date is the end of Mr. Harris's eligibility, January 31, 2012 [Doc. 41 at Page ID # 1568 n.6]. Defendant Board of Trustees purports to rely on the reasonableness of Defendant United's review of Plaintiff's claim, but does not attempt to argue that the relevant date is September 2011 [*See* Doc. 43 at Page ID # 1593-94].

An unreasonable interpretation of plan language is arbitrary and capricious as a matter of law. *See Shelby County Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 935 (6th Cir. 2000); *see also Glenn*, 461 F.3d at 666 (administrator's decision must be the result of a deliberate, principled reasoning process). I **CONCLUDE** that neither the SPD nor the Policy can reasonably be interpreted to require a participant to be totally disabled as of the last day of employment in order for the Disability Continuation Provision to apply. According to the Policy, the participant must "become Totally Disabled while insured

under the Policy prior to age 60" (AR 17). According to the SPD, the provision may apply if a participant's "disability began while [the participant was] insured under this provision" (AR 247). Neither mentions the end of a participant's employment.

Defendant United claims its interpretation "was dictated by the language of the Policy and its exclusivity provisions with regard to continuation of coverage" [Doc. 44 at Page ID # 1610]. Defendant United has not, however, explained how the language "while insured under the Policy" could reasonably mean that the participant must have stopped working due to total disability. Defendant United's reference to the Policy's exclusivity provisions does not support its interpretation. The Policy states that a participant who is eligible to continue insurance under the Disability Continuation Provision will not be eligible for portability (AR 17), and that a participant who is eligible for *and elects* coverage under the portability provision will not be eligible for the Disability Continuation Provision or for conversion (AR 19). As pointed out by Plaintiff, eligibility for the Disability Continuation Provision prevents eligibility for portability, but a participant must be eligible for *and actually elect* portability in order to prevent eligibility for the Disability Continuation Provision [*see* Doc. 48 at Page ID # 1658]. Mr. Harris did not elect portability. Moreover, nothing in the exclusivity provisions even purports to bear on the date on which a participant must be disabled in order to qualify for the Disability Continuation Provision.

Each of the parties argues what the medical evidence in the Administrative Record means as to Mr. Harris's condition on January 31, 2012, but none of the parties can point to a medical record or opinion as to Mr. Harris's condition on that precise day. Defendant United's medical consultant, Dr. Schlanger, concluded that Mr. Harris was not disabled "through[] at least

8/23/11" but was "disabled from any work by 2/23/12"[10] (AR 410). Defendant United did not ask, and Dr. Schlanger did not express an opinion regarding, Mr. Harris's condition on the correct date of January 31, 2012.

I **CONCLUDE** that Defendant United's denial of Plaintiff's claim for benefits was arbitrary and capricious. I **RECOMMEND** that Plaintiff's claim for benefits be **REMANDED** for consideration under the Disability Continuation Provision as of January 31, 2012.

### B.    Count III: Equitable Relief Under 29 U.S.C. § 1132(a)(3)

Plaintiff argues she is entitled to equitable relief under 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3), for the failure of Defendant Board of Trustees to inform Mr. Harris his eligibility was running out and its failure to tell Mr. Harris that the continued withdrawal of premiums from Ms. Hood's bank account did not mean that he still had life insurance coverage [Doc. 45 at Page ID # 1622-23, 1625]. Plaintiff argues this injury is "separate and distinct" from her claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B) [Doc. 45 at Page ID # 1622]. Defendant Board of Trustees argues Plaintiff cannot maintain causes of action under both § 502(a)(1)(B) and § 502(a)(3) because Plaintiff's § 502(a)(3) claim is merely a repackaged claim for benefits under § 502(a)(1)(B) [Doc. 38 at Page ID # 1270-71].

The Sixth Circuit's recent decision in *Rochow v. Life Insurance Co. of North America*, 780 F.3d 364 (2015), is determinative on this issue. *Rochow* discussed the two remedial provisions of ERISA at issue here, § 502(a)(1)(B) and § 502(a)(3), which state as follows:

A civil action may be brought—

(1) by a participant or beneficiary—

---

[10] Defendant United argues Dr. Schlanger's conclusion means Mr. Harris was disabled "only by" February 23, 2012 [Doc. 44 at Page ID # 1614; Doc. 47 at Page ID # 1652], while Plaintiff argues it means Mr. Harris was disabled "sometime *before*" February 23, 2012 [Doc. 48 at Page ID # 1660] (emphasis in original). Both parties misconstrue the meaning of the preposition "by." In any case, Dr. Schlanger's opinion does not refer to the relevant date, January 31, 2012.

. . .

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

. . .

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

In discussing the relationship between these two provisions, the court explained that "a claimant cannot pursue a breach-of-fiduciary-duty claim under § 502(a)(3) based solely on an arbitrary and capricious denial of benefits where the § 502(a)(1)(B) remedy is adequate to make the claimant whole." *Rochow*, 780 F.3d at 371. Rather, irrespective of the degree of success a claimant obtains under § 502(a)(1)(B), the claimant can also pursue an equitable remedy under § 502(a)(3)

> only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate.

*Id.* at 372 (emphasis in original).

Simultaneous claims for relief under § 502(a)(3) and § 502(a)(1)(B) are available where a plaintiff alleges separate injuries that cannot both be remedied under §502(a)(1)(B). In *Hill v. Blue Cross & Blue Shield of Mich.*, for example, the court allowed plaintiffs to bring a claim for individual benefits under § 502(a)(1)(B) along with a breach of fiduciary duty claim under § 502(a)(3) seeking plan-wide injunctive relief. 409 F.3d 710, 717-21 (6th Cir. 2005). The court concluded the latter claim was not simply a repackaged claim for individual relief, because only

24

injunctive relief under § 502(a)(3) would provide plaintiffs with complete relief. *Id.* at 718. Under *Rochow*, the denial of benefits and any profit accruing to the defendant from withholding those benefits are "one and the same injury," and the withholding aspect of the injury is "simply ancillary thereto, the continuing effect of the same denial." 780 F.3d at 373. The *Rochow* court also noted that "the Supreme Court has never stated that recovery under both § 502(a)(3) and § 502(a)(1)(B) may be warranted for a single injury." *Id.* at 375.

In Count I, Plaintiff seeks relief under § 502(a)(1)(B) for the denial of life insurance benefits. In Count III, Plaintiff seeks relief under § 502(a)(3) for the failure of Defendant Board of Trustees to inform Mr. Harris his life insurance eligibility was running out and its failure to tell Mr. Harris that, despite the continued withdrawal of premiums from Ms. Hood's bank account, he no longer had life insurance coverage. Under either theory, the alleged harm to Plaintiff is, ultimately, the loss of her father's life insurance benefits. Despite Plaintiff's assertion to the contrary, Plaintiff's § 502(a)(3) claim is merely a repackaged claim for benefits under § 502(a)(1)(B).

The specific relief Plaintiff seeks in Count III also makes clear that Plaintiff's § 502(a)(3) is a repackaged claim for benefits. Each element of relief Plaintiff seeks either equates to the payment of her father's life insurance benefits or is ancillary to the withholding of those benefits, whether couched as estoppel [Doc. 1 at Page ID # 14, ¶ 8], reformation [*id.* at ¶ 9], damages in the amount of unpaid benefits [*id.* at ¶ 10], or damages in the amount of Defendants' profits on the withheld benefits [*id.* at ¶ 11].

I **CONCLUDE** that Plaintiff has not suffered an injury separate and distinct from a denial of benefits under § 502(a)(1)(B) and therefore may not seek relief under § 502(a)(3).

25

## C. Count IV: Penalty for Failure to Provide Plan Documents Under 29 U.S.C. § 1132(c)

Plaintiff seeks statutory penalties for Defendant Board of Trustees' failure to provide the SPD, the Plan Document, and the Policy within 30 days of Plaintiff's requests [Doc. 41 at Page ID # 1584-85]. Plaintiff seeks $213,180.00, calculated as follows:

| Request/Date Received | Documents Outstanding | Documents Produced/Date | Days subject to Penalty | Maximum Penalty (based on date all requested docs were provided) |
|---|---|---|---|---|
| First Request/ 12/6/12 | Master Plan Document (MPD), SPD, Insurance Policy (IP) | MPD-12/10/14 SPD-8/7/14 IP-8/7/14 | MPD-704 SPD-579 IP-579 | $77,440 |
| Second Request/ 3/18/13 | MPD SPD IP | MPD-12/10/14 SPD-8/7/14 IP-8/7/14 | MPD-602 SPD-549 IP-549 | $66,220 |
| Third Request/ 5/1/13 | MPD SPD IP | MPD-12/10/14 SPD-8/7/14 IP-8/7/14 | MPD-558 SPD-433 IP-433 | $61,380 |
| Discovery Request/ 8/28/14 | MPD | MPD-12/10/14 | MPD-74 | $8140 |
| Total | | | | $213,180 |

[Doc. 41 at Page ID # 1585].

ERISA § 502(c)(1)(B) provides that

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).  As required by the Debt Collection Improvement Act of 1996, the $100.00 a day limit has been increased to $110.00 for violations after July 29, 1997.  *See* 62 Fed. Reg. 40696.

Regarding the documents the Plan Administrator must provide upon request, ERISA § 104(b)(4) states as follows:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

A court has discretion in deciding whether to impose a penalty of up to $110.00 per day for a failure to provide requested documents.  *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).  While many courts have refused to impose any penalty at all absent a showing of bad faith or prejudice to the plaintiff, neither bad faith nor prejudice is required to impose the penalty; rather, they are factors for the court to consider when exercising its discretion.  *See id.* at 1068-69; *Knickerbocker v. Ovako-Ajax, Inc.*, 1999 WL 551409, at * 4 (6th Cir. July 20, 1999) (unpublished) ("[a]lthough § 1132(c)(1)(B) does not require prejudice to impose penalties, a district court may consider prejudice in exercising its discretion").

"The purpose of the statute is to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so." *Bartling*, 29 F.3d at 1068; *see also Fadalla v. Life Automotive Products, Inc.*, 2009 WL 3295369, at * 2 (W.D. Tenn. Oct. 13, 2009) (unpublished) ("The purpose of ERISA's penalty provision is not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information") (quoting *Garst v. Wal-Mart Stores, Inc.*, 30 Fed. App'x 585, 591 (6th Cir. Mar. 12, 2002) (unpublished)).

Further, a plan administrator owes a fiduciary duty to a plan participant or beneficiary "to provide complete and accurate information." *McGrath v. Lockheed Martin Corp.*, 48 Fed. App'x 543, 557 (6th Cir. Oct. 9, 2002) (unpublished). "ERISA fiduciary duty provisions incorporate the common law of trusts, and the 'duty to inform is a constant thread in the relationship between beneficiary and trustee.'" *McGrath*, 48 Fed. App'x at 555 (quoting *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999)).

### 1. The SPD

As Defendant Board of Trustees points out [Doc. 43 at Page ID # 1601-02], Plaintiff did not request the SPD. The First Request refers to the fact that Ms. Hood received the SPD from Defendant Board of Trustees in response to her September 7, 2012 letter and specifically omits the SPD from the list of documents requested: "if there are any other ERISA plan documents that control this claim, ***other than the SPD***, we request a copy of those plan documents" (JS ¶ 48; AR 368) (emphasis added). The Second Request states that Ms. Hood had received the SPD but not the Policy or any other Plan documents, and characterizes the First Request as having asked for "those additional ERISA plan documents" (AR 351). It lists types of documents that had not yet been provided, "other than the SPD you had previously provided" (AR 352). The Second Request then states: "please consider this letter to be another request for those same documents . . . " (*id.*). The Third Request also does not ask for the SPD (AR 310-11). Because Plaintiff specifically excluded the SPD from her requests, I **CONCLUDE** that it is not appropriate to impose a penalty for Defendant Board of Trustees' failure to provide the SPD to Plaintiff.

### 2.      The Policy

Plaintiff requested a copy of the Policy in the First Request, which Defendant Board of Trustees received on December 6, 2012[11] (JS ¶¶ 26, 47).  Defendant Board of Trustees' failure to comply with this request within 30 days violated 29 U.S.C. § 1132(c)(1)(B) and opened the door to liability for a statutory penalty of up to $110.00 per day.  Later, Plaintiff's Third Request informed Defendant Board of Trustees that she had received a copy of the Policy from Defendant United (AR 310).  The Third Request did not request another copy of the Policy from Defendant Board of Trustees (JS ¶ 61; AR 310-11).

Plaintiff argues that she was prejudiced by Defendant Board of Trustees' failure to provide the Policy in the timeframe required by ERISA.  Plaintiff specifically alleges that she did not learn of the Disability Continuation Provision until she received the Policy, thus hampering her ability to collect evidence to support her claim [Doc. 41 at Page ID # 1586].  Plaintiff also asserts prejudice in that she was not aware of the Disability Continuation Provision when she made her claim [Doc. 41 at Page ID # 1566].  As pointed out by Defendant Board of Trustees [Doc. 43 at Page ID # 1604], however, Plaintiff's arguments as to prejudice overlook the fact that the Disability Continuation Provision is discussed in the SPD as well as in the Policy (AR 247-48), and Plaintiff already had the SPD before she made the First Request (AR 351, 368).  Plaintiff's argument also overlooks the fact that she received the Policy from Defendant United under cover of a letter dated March 28, 2013 (AR 342), approximately one month before she submitted the Claim Form.  Plaintiff's counsel, in fact, referred to the Policy's Disability Continuation Provision in the April 29, 2013 Third Request (AR 311), one day before Plaintiff

---

[11] Although it was not necessary for imposition of a penalty, the First Request included an explanation of ERISA's statutory penalties for a failure to respond within 30 days (JS ¶ 49; AR 369).

Case 1:14-cv-00072-HSM-SKL   Document 52   Filed 06/01/15   Page 29 of 35   PageID #: 1702

signed the Claim Form (AR 305) and two days before her counsel mailed the Claim Form to Defendant United (AR 334).

Plaintiff argues that Defendant Board of Trustees acted in bad faith by purposefully refusing to provide documents on multiple occasions [Doc. 41 at Page ID # 1587]. Plaintiff contends that the email exchange between Ms. Garrison of SBA and Ms. Barajas of Defendant United upon receipt of the Second Request also demonstrates bad faith [*id.*] Defendant Board of Trustees disagrees, but points to no contrary evidence regarding its failure to provide the Policy, other than the disputed facts regarding the earlier phone conversation between Ms. Garrison and Ms. Geselbracht [Doc. 43 at Page ID # 1601-02]. While the content of the call is in dispute, it is undisputed that Defendant Board of Trustees' first attempt to contact Plaintiff's counsel was not made until more than 30 days after SBA received the First Request on behalf of Defendant Board of Trustees [JS ¶¶ 26, 28].

Defendant Board of Trustees' argument as to good faith is undermined by its response, or lack thereof, to the Second Request. The Second Request stated that Defendant Board of Trustees' previous response was inadequate and again requested the Policy (JS ¶ 57; AR 352-53). Defendant Board of Trustees again failed to respond to Plaintiff within 30 days. Instead of responding to Plaintiff, Ms. Garrison agreed with Ms. Barajas that Ms. Garrison would get information for Plaintiff's claim together, which she also apparently failed to do (JS ¶ 60; AR 339).

Plaintiff asserts that each request for documents sets up a separate violation for which Plaintiff may recover $110.00 per day [Doc. 41 at Page ID # 1585]. Plaintiff cites no case in which a court "stacked" penalties in the manner she suggests. Rather, Plaintiff relies on language in 29 U.S.C. § 1132(c)(1)(B) which states in relevant part, "each violation . . . with

30

respect to any single participant or beneficiary, shall be treated as a separate violation." This language does not, however, state that each request for the same document by the same participant shall be treated as a separate violation, and, under the circumstances presented here, I do not find it appropriate to do so.

Defendant Board of Trustees argues that Plaintiff was not a beneficiary under the Plan for purposes of the document request statute because she did not have a colorable claim that she would prevail in a suit for benefits [Doc. 38 at Page ID # 1279 (citing *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 79 (3d Cir. 2001)]. As Plaintiff correctly points out, the authority on which Defendant Board of Trustees relies does not support its conclusion that Plaintiff's claim is not colorable [Doc. 45 at Page ID # 1626-27]. Plaintiff's claim may not ultimately be meritorious, but it is certainly colorable.

Considering Defendant Board of Trustees' repeated failure to provide the Policy to Plaintiff, even in the face of explicit warnings regarding statutory penalties in the First Request and the Second Request; the evidence that Defendant Board of Trustees acted, if not in actual bad faith, at least in disregard of Plaintiff's rights; and the purpose of the statute to induce timely action by administrators in response to participants' requests for documents, I **FIND** that it is appropriate to impose a penalty of $110.00 per day for Defendant Board of Trustees' failure to provide Plaintiff with the Policy. Considering Plaintiff's failure to demonstrate prejudice from not receiving the Policy and that Plaintiff implicitly withdrew her request for the Policy as of the Third Request, I **FIND** that an appropriate end date for calculation of the penalty is May 1, 2013, the date on which Defendant Board of Trustees received the Third Request.[12] Therefore, I

---

[12] I find the date on which Defendant Board of Trustees received the Plaintiff's implicit withdrawal of her request for the Policy to be a more appropriate end date than an estimate of the date on which Plaintiff actually received the Policy. I find this date to be consistent with the

**CONCLUDE** that a penalty of $12,760.00 is appropriate, calculated at $110.00 per day for the 116 days between January 5, 2013 (30 days after Defendant Board of Trustees received the First Request) and May 1, 2013 (when Defendant Board of Trustees received the Third Request).

### 3.     The Plan Document

Plaintiff made no specific request for the Plan Document, but did request "any other ERISA plan documents that control this claim" and "any other relevant documents (as defined in the ERISA claims regulations in 29 C.F.R. § 2560.503-1) concerning this claim" (JS ¶ 48; AR 368). Plaintiff did not learn of the existence of the Plan Document until December 10, 2014, and Defendant Board of Trustees produced a copy of it to Plaintiff that day (JS ¶¶ 74, 77). If the Plan Document was within the scope of Plaintiff's request, Defendant Board of Trustees could potentially be subject to additional per-day penalties for the period between May 1, 2013 and December 10, 2014 for its failure to produce the Plan Document earlier.

Outside of the context of a group health plan or a plan providing disability benefits, ERISA regulations define a document as "relevant" to a claimant's claim if the document

> (i) Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; [or]
>
> (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8). Defendant Board of Trustees maintains that because the Plan's life insurance benefits are provided through a third-party insurer, the Plan Document contains no relevant information regarding those benefits [Doc. 43 at Page ID # 1602-03]. Defendant Board

---

purpose of the statutory penalty, which focuses on inducing administrators to respond to participants' requests within 30 days.

of Trustees also maintains that Defendant United did not use the Plan Document in processing Plaintiff's claim [Doc. 43 at Page ID # 1600-01]. Although Defendant Board of Trustees points to no evidence in support of this assertion, it is clear that the Plan Document is not a part of the Administrative Record, but was produced separately in the litigation [Doc. 39-2]. It is also undisputed that Defendant Board of Trustees uses the SPD as the governing document for the Plan (JS ¶ 6).

Plaintiff argues that she was prejudiced by not receiving the Plan Document until late in the litigation [Doc. 41 at Page ID # 1586]. She concedes, however, that the Plan Document does not specifically provide for life insurance benefits [Doc. 45 at Page ID # 1619 n.2]. Further, Plaintiff points to no provision of the Plan Document that differs from the SPD or that would have caused her to act otherwise than she has done if she had received the Plan Document earlier. And although Plaintiff states that the SPD and the Plan Document contradict each other, the only actual discrepancies to which she points are discrepancies between the SPD and the Policy, not between the SPD and the Plan Document [Doc. 48 at Page ID # 1662; *see also* Doc. 45 at Page ID # 1630]. Considering that Plaintiff did not specifically request the Plan Document; that it does not clearly come within the scope of Plaintiff's broad requests; the lack of prejudice to Plaintiff from not receiving the Plan Document; and the lack of a showing of bad faith in Defendant Board of Trustees' failure to produce it earlier, I **CONCLUDE** that it is not appropriate to impose an additional penalty for Defendant Board of Trustees' failure to provide the Plan Document to Plaintiff earlier than it did.

## IV.   CONCLUSION

Having carefully reviewed the parties' arguments, the evidence, and the Administrative Record, I **RECOMMEND**[13] that:

(1)     Plaintiff's motion for summary judgment [Doc. 40] be **GRANTED IN PART** to the extent it seeks statutory penalties of $12,760.00 under 29 U.S.C. § 1132(c)(3) and **DENIED IN PART** to the extent it seeks additional penalties under 29 U.S.C. § 1132(c)(3) and relief under 29 U.S.C. § 1132(a)(3);

(2)     Defendant Board of Trustees' motion for summary judgment [Doc. 37] be **GRANTED IN PART** to the extent it seeks judgment on Plaintiff's claim for relief under 29 U.S.C. § 1132(a)(3) and **DENIED IN PART** to the extent it seeks judgment on Plaintiff's claim for statutory penalties under 29 U.S.C. § 1132(c)(3);

(3)     Defendant United's motion for judgment on the administrative record [Doc. 21] be **DENIED**; and

(4)     Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) be **REMANDED** for a determination of whether the insured was totally disabled as defined by the relevant policy on January 31, 2012.

---

[13] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 & n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Also before the Court is Plaintiff's motion for a hearing on the pending dispositive motions [Doc. 49]. Defendant Board of Trustees has filed a response in opposition to the motion for a hearing [Doc. 51]. Oral argument is not necessary for the Court and the parties have had ample opportunities to address their own arguments and respond to their opponents' arguments. Plaintiff's motion for a hearing [Doc. 49] is therefore **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE