UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MEAGAN HARRIS-FRYE, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 1:14-cv-72 |
| v. ) | |
| ) | Judge Mattice |
| UNITED OF OMAHA LIFE INSURANCE ) | Magistrate Judge Lee |
| COMPANY; and BOARD OF TRUSTEES, ) | |
| MID-SOUTH CARPENTERS REGIONAL ) | |
| COUNCIL HEALTH AND ) | |
| WELFARE FUND, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## ORDER

On June 1, 2015, United States Magistrate Judge Susan K. Lee filed her Report

and Recommendation ("R & R") pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P.

72(b). (Doc. 52). Magistrate Judge Lee recommended that: (1) Plaintiff's motion for

summary judgment (Doc. 40) be granted in part to the extent that it seeks $12,760.00 in

statutory penalties under 29 U.S.C. § 1132(c)(3) and denied in part to the extent that it

seeks additional penalties under 29 U.S.C. § 1132(c)(3) and relief under 29 U.S.C. §

1132(a)(3); (2) Defendant Board of Trustees, Mid-South Carpenters Regional Council

Health and Welfare Fund's ("Defendant Board of Trustees") motion for summary

judgment (Doc. 37) be granted in part to the extent it seeks judgment on Plaintiff's claim

for relief under 29 U.S.C. § 1132(a)(3) and denied in part to the extent it seeks judgment

on Plaintiff's claim for statutory penalties under 29 U.S.C. § 1132(c)(3); (3) Defendant

United of Omaha Life Insurance Company's ("Defendant United") motion for judgment

on the administrative record (Doc. 21) be denied; and (4) Plaintiff's claim for benefits

under 29 U.S.C. § 1132(a)(1)(B) be remanded for a determination of whether the insured was totally disabled as defined by the relevant policy on January 31, 2012. (Doc. 52 at 34).

Plaintiff and Defendant Board of Trustees filed timely objections (Docs. 54 and 55), and timely responses to each other's objections (Docs. 57 and 58).[1] Specifically, Defendant Board of Trustees objects to Magistrate Judge Lee's recommendation that: (1) Plaintiff exhausted her administrative remedies; (2) Defendant Board of Trustees has been shown to control administration of the plan such that it is a proper defendant; and (3) Plaintiff is entitled to $12,760 in statutory penalties under 29 U.S.C. 1132(c).[2] (Doc. 54). Plaintiff objects to Magistrate Judge Lee's recommendation that: (1) Plaintiff's Employee Retirement Income Security Act ("ERISA") § 502(a)(3) claim should be dismissed because it was merely a repackaged ERISA § 502(a)(1)(B) claim; and (2) Defendant Board of Trustees should not be assessed a statutory penalty under 29 U.S.C. 1132(c) for its failure to provide Plaintiff with a copy of the Plan Document associated with the Summary Plan Description ("SPD"). (Doc. 55). The Court has conducted a *de novo* review of record and the R & R—specifically reviewing those portions to which Defendant Board of Trustees and Plaintiff have objected—and will address each party's objections, or lack thereof, in turn.

## I.  BACKGROUND

Magistrate Judge Lee's R & R outlined the procedural and factual background of this case at great length. (Doc. 52 at 3–14). The Parties have not objected to the Magistrate Judge's recitation of the facts, and the Court concludes that it is accurate.

---

[1] Defendant United did not file a timely objection to Magistrate Judge Lee's R & R.

[2] Defendant Board of Trustees argues that it should not be assessed any statutory penalty, or, in the alternative, that the penalty should be reduced to $9,020.00. (Doc. 54 at 6–8).

Thus, for purpose of addressing the Parties' objections, the Court **ADOPTS BY REFERENCE** the entire "Facts" section of the R & R. (*See id.*).

## II.     STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R & R to which an objection is made. 28 U.S.C. § 636(b)(1). Upon review, the Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. *Id.*

## III.    DEFENDANT UNITED

Defendant United has not filed an objection to Magistrate Judge Lee's R & R.[3] Nevertheless, the Court has conducted a review of the R & R, as well as the record, and it agrees with Magistrate Judge Lee's well-reasoned conclusions regarding Defendant United's Motion for Judgment on the Pleadings (Doc. 21). The Court will thus **ACCEPT AND ADOPT** Magistrate Judge Lee's recommendations regarding Defendant United's claims. Accordingly, Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) will be **REMANDED** for consideration under the Disability Continuation Provision as of January 31, 2012 and Defendant United's Motion for Judgment on the Pleadings (Doc. 21) will be **DENIED**.

## IV.     DEFENDANT BOARD OF TRUSTEES' OBJECTIONS

### A.     Exhaustion of Administrative Remedies and Defendant Board of Trustees' Status as a Proper Defendant

Defendant Board of Trustees objects to Magistrate Judge Lee's finding that Plaintiff has exhausted her administrative remedies and that Defendant Board of

---

[3] Magistrate Judge Lee specifically advised the parties that they had 14 days in which to object to the Report and Recommendation and that failure to do so would waive their right to appeal. (Doc. 52 at 34 n.13); *see* Fed. R. Civ. P. 72(b)(2); *see also Thomas v. Arn*, 474 U.S. 140, 148-51 (1985) (noting that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"). Even taking into account the three additional days for service provided by Fed. R. Civ. P. 6(d), the period in which Defendant United could timely file any objections has now expired.

Trustees is a proper defendant in this action. These objections, however, merely restate the arguments presented in Defendant Board of Trustees' Memorandum in Support of its Motion for Summary Judgment, which were fully addressed in Magistrate Judge Lee's R & R (*Compare* Doc. 38 *with* Doc. 54; *see* Doc. 52). The Court has conducted a review of the R & R, as well as the record, and it agrees with Magistrate Judge Lee's well-reasoned conclusions. The Court notes that on remand, Defendant Board of Trustees is free to ensure that the requirements of 29 C.F.R. § 2560.503-1(g)(1)(iv) are satisfied, namely that any adverse benefit determination notification include a full "description of the plan's review procedures and the time limits applicable to such procedures." This will afford Defendant Board of Trustees any independent review the plan may require[4] regarding an adverse benefit determination made by Defendant United with respect to Mr. Harris' eligibility under the Disability Continuation Provision as of January 31, 2012.[5]

Accordingly, Defendant Board of Trustees' objections with respect to Magistrate Judge Lee's findings that Plaintiff has exhausted her administrative remedies and that Defendant Board of Trustees is a proper defendant in this action will be **OVERRULED**, and Defendant Board of Trustees' Motion for Summary Judgment (Doc. 37) with respect to Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) will be **DENIED**.

---

[4] Plaintiff disputes that Defendant Board of Trustees is entitled to review denials of life insurance benefits. (Doc. 45 at 1–2).

[5] In her R & R, Magistrate Judge Lee correctly found that "Defendant Board of Trustees' failure to satisfy its own requirement in the SPD to describe review procedures in any notice of an adverse benefit determination (AR 216) provides additional grounds for deeming Plaintiff to have exhausted her administrative remedies." (Doc. 52 at 19).

**B.      Statutory Penalties Under 29 U.S.C. § 1132(c) (the Policy)**

Next, Defendant Board of Trustees objects to Magistrate Judge Lee's conclusion that it should be assessed $12,760.00 in statutory penalties for its failure to provide Plaintiff with a copy of the Life Insurance Policy ("the Policy"). Specifically, Defendant Board of Trustees contends that because Plaintiff was not prejudiced by the Board's failure to provide the Policy and because Defendant Board of Trustees did not act in bad faith, statutory penalties under 29 U.S.C. § 1132(c) are inappropriate. Alternatively, Defendant Board of Trustees objects to Magistrate Judge Lee's timeline, arguing that March 28, 2013, not May 1, 2013, should be the cutoff date for calculation of the statutory penalty. For the reasons stated herein, the Court agrees with Magistrate Judge Lee's well-reasoned conclusions.

29 U.S.C. § 1132(c) provides, in relevant part,

> Any Administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

The $100.00 per day limit was increased to $110.00 per day for violations after July 29, 1997. *See* Final Rule Relating to Adjustment of Civil Monetary Penalties, 62 Fed. Reg. 40696, 40697 (July 29, 1997). Notwithstanding Defendant Board of Trustees' repeated arguments that statutory penalties are inappropriate due to the lack of prejudice to Plaintiff and Defendant Board of Trustees' alleged good faith, neither prejudice nor bad

faith is required to impose a penalty under 29 U.S.C. 1132(c). *See McGrath v. Lockheed Martin Corp.*, 48 F. App'x 543, 557 (6th Cir. 2002) ("In awarding the $7,700.00 in penalties [under 29 U.S.C. 1132(c)], the district court was not required to make a finding that plaintiff's right to administratively appeal ES Plan benefit decisions was prejudiced, or that Westmoreland acted in bad faith."); *see also Gregory v. Goodman Mfg. Co., L.P.*, 2012 WL 685283 at *3 (E.D. Tenn. Mar. 2, 2012) ("To the extent that Defendant suggests that penalties may be imposed only after explicit findings of bad faith and prejudice, it is mistaken."). The purpose of the penalty is not to punish defendants' bad faith actions or for any resulting prejudice to plaintiffs, but rather "to induce administrators to timely provide participants with requested plan documents, and to penalize failures to do so." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). The Court agrees with Magistrate Judge Lee's conclusion that penalties are appropriate in this case, as Defendant Board of Trustees repeatedly failed to provide Plaintiff with a copy of the Policy despite Plaintiff's explicit warnings regarding the possibility of statutory penalties for failure to do so. Accordingly, Defendant Board of Trustees' objection to the award of any statutory penalty under 29 U.S.C. § 1132(c) will be **OVERRULED**.

Having rejected Defendant Board of Trustees' contention that statutory penalties are wholly inappropriate, the Court now turns to the amount of penalties to be assessed for Defendant Board of Trustees' failure to provide Plaintiff with a copy of the Policy. It is uncontested that Defendant Board of Trustees' period in which to respond timely to Plaintiff's first request expired on January 5, 2013 (30 days after Plaintiff's initial request for documents). Magistrate Judge Lee found that Plaintiff implicitly withdrew her request for a copy of the Policy in a letter dated April 29, 2013, and received by

Case 1:14-cv-00072-HSM-SKL   Document 59   Filed 09/21/15   Page 6 of 21   PageID #: 1752

Defendant Board of Trustees on May 1, 2013.[6] (Doc. 52 at 11, 11 n.8, 31 n.12 and accompanying text).

Magistrate Judge Lee therefore concluded that the proper end date for assessing penalties under 29 U.S.C. § 1132(c) was May 1, 2013, as Defendant Board of Trustees could reasonably conclude that, having been informed by Plaintiff that she had received a copy of the Policy from Defendant United, Defendant Board of Trustees no longer needed to send her a copy of same. (Doc. 52 at 31–32). In its objections, Defendant Board of Trustees argues that the proper end date for assessing statutory penalties should be March 28, 2013, the day on which Plaintiff indicated that she received a copy of the Policy from Defendant United. (Doc. 54 at 7–8). As discussed above, however, the purpose of the statutory penalties under 29 U.S.C. § 1132(c) is "to induce administrators to timely provide participants with requested plan documents." *Bartling*, 29 F.3d at 1068. 29 U.S.C. § 1132(c), therefore, seeks to punish administrators for their failure to respond to beneficiaries' requests, not to compensate beneficiaries for their lack of access to requested documents. Therefore, assessing statutory penalties against Defendant Board of Trustees through May 1, 2013 properly addresses its failure to respond to Plaintiff's request for a copy of the Policy.

Accordingly, Defendant Board of Trustees' objections to Magistrate Judge Lee's calculation of statutory penalties under 29 U.S.C. § 1132(c) for failure to provide Plaintiff a copy of the Policy will be **OVERRULED**. For this failure, Defendant Board of Trustees will be assessed a statutory penalty of **$12,760.00**, calculated at $110.00 per day for the 116 days between January 5, 2013 and May 1, 2013.

---

[6] In this letter, Plaintiff stated that she had received a copy of the Policy from Defendant United. (Doc. 52 at 11).

## V.     PLAINTIFF'S OBJECTIONS

### A.     Plaintiff's 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) Claim

Plaintiff objects to Magistrate Judge Lee's finding that Plaintiff is not entitled to equitable relief under 29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3). Specifically, Plaintiff argues that her breach of fiduciary duties claim is not merely a repackaged ERISA § 502(a)(1)(B) claim, but rather alleges a separate and distinct injury. For the reasons stated herein, the Court disagrees with Magistrate Judge Lee's recommendation that Plaintiff's breach of fiduciary duties claim is merely a repackaged ERISA § 502(a)(1)(B) claim; the Court finds, however, that as to this claim, there is no genuine dispute as to any material fact, and Defendant Board of Trustees is entitled to judgment as a matter of law. Therefore, the Court will grant Defendant Board of Trustees' Motion for Summary Judgment (Doc. 37) as to Plaintiff's ERISA § 502(a)(3) claim.

ERISA § 502(a)(3) provides,

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). This provision "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). A claimant is entitled to bring an ERISA § 502(a)(3) breach of fiduciary duties claim in addition to an ERISA § 502(a)(1)(B) claim for recovery of benefits "only where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be

Case 1:14-cv-00072-HSM-SKL   Document 59   Filed 09/21/15   Page 8 of 21   PageID #: 1754

inadequate." *Rochow v. Life Ins. Co. of North America*, 780 f.3d 364, 372 (6th Cir. 2015) (emphasis in original).

Here, Plaintiff argues that her breach of fiduciary duties claim under ERISA § 502(a)(3) alleges a separate and distinct injury from the arbitrary and capricious denial of benefits under ERISA § 502(a)(1)(B). Specifically, Plaintiff believes her claim under ERISA § 502(a)(1)(B) was denied because Defendant United used the wrong date in assessing Mr. Harris' eligibility for continued life insurance under the Disability Continuation Provision. (Doc. 41 at 15–18). Plaintiff further argues that Defendant Board of Trustees' breach of fiduciary duties caused Mr. Harris to believe that continued payment of premiums from his mother's bank account qualified Mr. Harris for life insurance coverage under the Conversion provision of the life insurance policy.[7] (*Id.* at 18–21). Defendant Board of Trustees argues that the breach of fiduciary duties claim should be dismissed, as Plaintiff has only alleged a single injury, namely the denial of benefits under Mr. Harris' life insurance policy. This injury, Defendant Board of Trustees argues, can be fully addressed by an ERISA § 502(a)(1)(B) claim for denial of benefits, thus leaving Plaintiff unable to make a claim under ERISA § 502(a)(3) for breach of fiduciary duties.

Both Defendant Board of Trustees and Magistrate Judge Lee's R & R mischaracterize Plaintiff's claimed injuries as one and the same. The facts of *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833 (6th Cir. 2007), are instructive. Therein, the plaintiff worked for Tennessee Gas Pipeline Company, which provided plaintiff with a long-term disability plan that "provided for 'own occupation'

---

[7] While Mr. Harris' premiums were automatically deducted from the bank account of his mother, Mary Hood, on a monthly basis, Ms. Hood was not listed as a beneficiary under Mr. Harris' life insurance policy. (Doc. 39 at 4).

disability benefits for a period of 24 months and 'any occupation' disability benefits thereafter until the age of 65."[8] *Id.* at 834. On January 1, 1998, plaintiff's policy changed in that it provided for "own occupation" disability benefits for only 12 months, as opposed to the previous plan's 24 months. *Id.* at 835. After 12 months under the new plan, an employee had to demonstrate that his injury prevented him from working in "any occupation" in order to receive benefits. *Id.* Plaintiff Gore was subsequently injured on the job, and received only 12 months of "own occupation" benefits. His claim for subsequent "any occupation" benefits was denied. *Id.* at 835–36. In his complaint, plaintiff Gore alleged

> two separate and distinct injuries. First, Gore alleges that [the] 'any occupation' determination was wrongly decided and that as a result he is entitled to . . . benefits. Second, he alleges that even if he is not entitled to the 'any occupation' determination, he should receive 'own occupation' benefits for two years rather than one based on [the plan administrator's] misrepresentation.

*Id.* at 840.

The United States Court of Appeals for the Sixth Circuit held that plaintiff Gore's claim for breach of fiduciary duties was not merely a repackaged ERISA § 502(a)(1)(B) claim for denial of benefits. *Id.* at 842. The court explained that

> [t]he reason why the district court and the Defendant confuse Gore's argument is because the remedy available to Gore if he had succeeded in his 'any occupation' claim would have rendered the 'own occupation' misrepresentation moot . . . If Gore received . . . benefits under the 'any occupation' coverage, Gore would no longer suffer any injury from [the plan administrator's] misrepresentation of the 'own occupation' benefit. Gore would receive payment for the second year regardless of whether [the plan administrator] should have told him that the 'own occupation' benefits only

---

[8] By 'own occupation' and 'any occupation' the policy-at-issue meant that, in order to receive benefits, the claimant's injury must have prevented him from working in his 'own occupation' or in 'any occupation' for which he was qualified. *See Gore*, 477 F.3d at 834–35.

lasted a year. However, the opposite result is not true. When Gore did not receive the 'any occupation' wages, his misrepresentation claim was not moot because his injury from the misrepresentation was not eliminated.

That Gore's 'own occupation' injury would be rendered moot if remedied by the 'any occupation' determination does not mean that the Plaintiff's alleged injury is 'a repackaged denial of benefits claim.' The fact that Plaintiff's claim for an equitable remedy 'could have been' resolved if his § 1132(a)(1)(B) claim was resolved in his favor, does not mean that his claim is the same as the one barred in *Wilkins*.

*Id.* at 841.

In the present case, Plaintiff's claim under ERISA § 502(a)(1)(B) for denying benefits under the Disability Continuation Provision resulted in a separate and distinct injury from that caused by Defendant Board of Trustees' alleged misrepresentation regarding Mr. Harris' continuation of life insurance benefits under the policy's Conversion provision. Like in *Gore*, Plaintiff's injury from Defendant Board of Trustees' alleged misrepresentation would be rendered moot if remedied by a favorable determination on the Disability Continuation Provision. But the converse is not true. If Plaintiff receives an adverse determination on the Disability Continuation Provision, the injury from Defendant Board of Trustees' alleged misrepresentation regarding Mr. Harris' continued coverage under the Conversion provision remains unaddressed. Furthermore, as in *Gore*, Magistrate Judge Lee found, and it is undisputed, that Plaintiff is not entitled to benefits under the strict terms of the Plan's Conversion Provision. (Doc. 52 at 21) ("Mr. Harris submitted a COBRA election form before his eligibility ended, but Defendants never received an application for conversion or portability of Mr. Harris's life insurance coverage. The only method by which Plaintiff may be entitled to benefits under 29 U.S.C § 1132(a)(1)(B), therefore, is the Disability Continuation

Provision.") Because Plaintiff's "claim of breach of fiduciary duty could not have been characterized as a denial of benefits claim," dismissal of Plaintiff's ERISA § 502(a)(3) claim as a repackaged ERISA § 502(a)(1)(B) claim is inappropriate.[9] *Gore*, 477 F.3d at 842. Accordingly, the Court **REJECTS** Magistrate Judge Lee's finding that Plaintiff's ERISA § 502(a)(3) claim is merely a repackaged ERISA § 502(a)(1)(B) claim.

Notwithstanding the propriety of Plaintiff's ERISA § 502(a)(3) claim, it must be dismissed as there is no genuine dispute as to any material fact, and Defendant Board of Trustees is entitled to judgment as a matter of law. In its breach of fiduciary duties claim, Plaintiff alleges that Defendant Board of Trustees' continued withdrawals of life insurance premiums out of Mr. Harris' mother's bank account after the expiration of Mr. Harris' life insurance policy triggered an affirmative duty for Defendant Board of Trustees to inform Mr. Harris that his life insurance policy had lapsed. (Doc. 41 at 18–21).

Several undisputed facts, however, lead the Court to conclude that this claim is without merit. First, Southern Benefit Administrators ("SBA"), Defendant Board of Trustees' third-party administrative manager, mailed COBRA information to Mr. Harris on January 20, 2012. (Doc. 39 at 5). With this information came an explanatory letter, stating in bold lettering,

> [p]lease note that if your health coverage terminates, or if you elect COBRA continuation coverage, your life insurance with Mid-South Carpenters Regional Council Health and

---

[9] Defendant Board of Trustees acknowledges that Plaintiff implicitly abandoned her argument that denial of benefits under the Conversion provision of the life insurance policy amounted to a violation of ERISA § 502(a)(1)(B) (Doc. 43 at 2–3) ("The portion of the Plaintiff's brief that addresses her § 502(a)(1)(B) claim entirely fails to mention that Mr. Harris had the right to convert to an individual life insurance policy through the Plan's Conversion Privilege, as alleged in the Plaintiff's original Complaint. Instead, the Plaintiff's claim to the underlying benefit now appears to rest solely on the theory that Mr. Harris was eligible for life insurance through what the Plaintiff titles the "LWOP," or "Waiver of Premium Benefit" contained in the Plan's SPD."). Throughout this Order, the Court has referred to the 'LWOP' or 'Waiver of Premium Benefit' as the Disability Continuation Provision.

> Welfare Fund (Defendant Board of Trustees) will terminate.
> You may be eligible to convert your life insurance policy by
> completing the Mutual of Omaha Term Life Portability
> Request Form that is enclosed.

(Doc. 38-1 at 1). Second, Mr. Harris signed a COBRA election form dated February 27,

2012, and Defendant Board of Trustees never received any written application or any

other communication from Mr. Harris that he wanted to continue his life insurance

benefits after his policy lapsed on January 31, 2012. (Doc. 39 at 5–6). Third, premium

payments continued to be deducted from Mr. Harris' mother's bank account after Mr.

Harris' policy lapsed. After Mr. Harris' death, his mother (who was not a beneficiary

under the Policy) contacted SBA to inquire about Mr. Harris' benefits. She was informed

that Mr. Harris was ineligible for benefits as of the time of his death, and the mistaken

deductions were reimbursed to Mr. Harris' mother by check on August 27, 2012. (*Id.* at

6–7). Fourth, Defendant Board of Trustees claims, and Plaintiff does not refute, that "no

evidence exists that Mr. Harris was aware of the mistaken deductions being made from

[his mother's] account." (Doc. 43 at 7). Finally, Plaintiff, who is the only beneficiary

listed on Mr. Harris' life insurance policy, did not contact Defendant Board of Trustees

until December 4, 2012, long after the mistakenly deducted premiums had been brought

to Defendant Board of Trustees' attention and had been reimbursed. (Doc. 39 at 7).

Plaintiff cites *Krohn v. Huron Memorial Hospital*, 173 F.3d 542 (6th Cir. 1999)

for the proposition that Defendant Board of Trustees had a duty to inform Mr. Harris

that its continued acceptance of premiums did not entitle Mr. Harris to coverage under

the life insurance policy. (Doc. 41 at 19) ("*Krohn* distills relevant law by holding that . . .

[the duty to inform] entails not only a negative duty not to misinform, but also **an**

**affirmative duty to inform when the trustee knows that silence might be**

**harmful**.") (emphasis in original). Plaintiff, however, ignores the court's statement in the same paragraph that "a trustee is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary *which he knows the beneficiary does not know* and which the beneficiary needs to know for his protection in dealing with a third person." *Krohn*, 173 F.3d at 548 (emphasis added) (citing Restatement (Second) of Trusts § 173, comment d (1959)).

In the present case, there is no evidence that Defendant Board of Trustees knew that any policy holder or beneficiary to the life insurance policy knew of the mistaken deductions from Mr. Harris' mother's bank account, and relied on same to assume that Mr. Harris was still covered under the life insurance policy. Only two such persons exist: Mr. Harris and Plaintiff. As stated above, there is no evidence that Mr. Harris was even aware of the mistaken premium deductions from his mother's bank account. In fact, the undisputed evidence shows that, because Mr. Harris returned his COBRA election form, which was included in a packet with information regarding the process for extending his life insurance policy, he was aware that his life insurance policy lapsed on January 31, 2012. Similarly, there is no evidence on the record that Plaintiff knew of the mistakenly made deductions from Mr. Harris' mother's account. Mr. Harris' mother, who was not a beneficiary to the life insurance policy, was the one to bring the mistake to Defendant Board of Trustees' attention, and the mistakenly deducted premiums were reimbursed well before Plaintiff contacted Defendant Board of Trustees to address the life insurance policy. Accordingly, Defendant Board of Trustees had no reason to know "that silence might be harmful." *Krohn*, 173 F.3d at 548.

Finally, Plaintiff relies on *Krohn* and *Killian v. Concert Health Plan*, 742 F.3d 651 (7th Cir. 2013) to support her claim. These cases, Plaintiff argues, stand for the

proposition that "the fiduciary's duty to provide complete and accurate information, even if the beneficiary does not specifically inquire, *is triggered when the beneficiary makes the ERISA fiduciary 'aware of the beneficiary's status and situation.'" Killian*, 742 F.3d at 669 (emphasis added). Plaintiff then analogizes this case to *Palen v. Kmart Corp.*, in which the beneficiary under the life insurance plan contacted Kmart and communicated the policy holder's desire to continue "all of his benefits." 2000 WL 658115 at *3 (6th Cir. May 9, 2000). The Sixth Circuit held that because the beneficiary so indicated, Kmart "became obligated to disclose all material information, including information that [the beneficiary] had not specifically requested," and that "Kmart breached this duty when it responded to [the beneficiary's] inquiries by providing information about health insurance only, without a word about continuation of [the policy holder's] life insurance." *Id.* Here, Plaintiff points to no communication made by either Mr. Harris or Plaintiff to Defendant Board of Trustees that would trigger such a duty. Defendant Board of Trustees could not be under a duty to disclose any information that was not "specifically requested" because nothing was requested at all.

Because Plaintiff has failed to "set forth specific facts showing that" Mr. Harris or Plaintiff knew of the mistaken premium deductions, or that Mr. Harris or Plaintiff communicated with Defendant Board of Trustees as did the beneficiary in *Palen*, summary judgment in Defendant Board of Trustees' favor is appropriate. *See Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 574, 586 (1986); Fed. R. Civ. P. 56). Accordingly, Plaintiff's Motion for Summary Judgment (Doc. 40) as to its claim for breach of fiduciary duties under ERISA § 502(a)(3) will be **DENIED** and Defendant Board of

Trustees' Motion for Summary Judgment (Doc. 37) as to the same claim will be **GRANTED.**

### B.  Statutory Penalties Under 29 U.S.C. 1132(c)(3) (Plan Document)

Finally, Plaintiff objects to Magistrate Judge Lee's finding that Defendant Board of Trustees should not be assessed statutory penalties under 29 U.S.C. 1132(c)(3) for its failure to provide Plaintiff with a copy of the Plan Document. (Doc. 55 at 5–9). Plaintiff argues that the Plan Document is a controlling and/or relevant ERISA document, and therefore should have been produced upon each of Plaintiff's requests for such documents. (Doc. 55 at 5). Defendant argues and Magistrate Judge Lee found that the SPD is the governing document for the life insurance benefits under the Plan, and that Plaintiff did not clearly request the Plan Document. For the reasons stated herein, the Court disagrees with Defendant and Magistrate Judge Lee, and finds that Defendant Board of Trustees is subject to statutory penalties for its failure to provide Plaintiff with a copy of the Plan Document.

Defendant Board of Trustees repeatedly asserts that it is undisputed that the SPD is the controlling document for the life insurance benefits. (*See, e.g.* Doc. 57 at 4; Doc. 39 at 3). While this is not entirely clear from the record,[10] it is also not the relevant inquiry. The relevant inquiry is whether the Plan Document is also a controlling or relevant document with regards to the ERISA plan at issue. A review of the case law and the language of the SPD itself show that the Plan Document is such a document.

---

[10] In their Statement of Material Facts Not In Dispute, the parties stipulate that "SBA on behalf of the Board of Trustees has identified the Summary Plan Description ("SPD") and the Plan Document as controlling documents in regards to the administration of benefits under the ERISA plan." (Doc. 39 at 11). Notably, Treva Garrison, Assistant Branch Manager at SBA, admits in her Deposition that the Plan Document is a controlling document over the life insurance policy. (Doc. 24-3 at 20) ("Question: Okay. How about the plan, does the plan control the life benefit claim, the plan document? Answer: ***The plan document and the SPD, yes.***") (emphasis added).

In *CIGNA Corp. v. Amara*, the United States Supreme Court held that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." 131 S. Ct. 1866, 1878 (2011) (emphasis in original). Subsequent Sixth Circuit case law has expanded on this holding: "[s]ince *Amara*, we have observed that SPDs are not legally binding, nor parts of the benefit plans themselves. . . SPDs lack controlling effect in the face of plan language to the contrary." *Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 620 (6th Cir. 2013) (citations omitted) (internal quotation marks omitted). Most recently, the Sixth Circuit shed light on this issue in *Board of Trustees v. Moore*, 2015 WL 5010985 (Aug. 25, 2015) (designated for publication). Therein, the question was whether the SPD was a binding document that set out enforceable terms where there was no plan document at all. *Id.* at *4 ("In a somewhat unusual process, although not unique to the elevator industry, the Board omitted what is normally the next step—the drafting of a welfare benefits plan—and went straight to creation of a summary plan description."). The court distinguished this unique situation from *Amara*, noting that

> [i]n *Amara*, however, it was clear that one document functioned as the plan itself, that a different document functioned as the summary plan description, and that the two documents contained conflicting terms. Nothing in *Amara* prevents a document from functioning both as the ERISA plan and as an SPD, *if the terms of the plan so provide*.

*Id.* at *5 (emphasis added). Ultimately, the court concluded, the SPD functions as the controlling ERISA plan "in the absence of a separate plan document." *Id.*

The present case is easily distinguishable from *Moore*. First, there is no evidence on the record that the terms of the plan provide that the SPD functions both as the

ERISA plan and the SPD. Second, in this case Defendant Board of Trustees has not, and cannot argue that there is not a "separate plan document" associated with the SPD. In fact, the language of the SPD specifically addresses the Plan Document:

> Although this booklet contains a great deal of information about your Plan, it is not the purpose of this booklet to cover every detail or every situation that might arise under your health plan. However, there is a complete set of Rules and Regulations which governs the operation and administration of this plan. *These Rules and Regulations are set forth in a legal document referred to as the Plan Document.* . . The Rules and Regulations set forth in the Plan Document are final and binding. Nothing in this booklet is meant to interpret or extend or change in any way the provisions expressed in the Plan Document itself. *If there is any difference between the Plan Document and the summary in this booklet, the Plan Document will control.*

(Doc. 18-5 at 33) (emphasis added). Defendant Board of Trustees argues that its failure to provide Plaintiff with the Plan Document is excused because the Plan Document contains no terms that specifically address the life insurance benefit, and because there are no conflicting terms between the SPD and the Plan Document regarding same. This argument represents two sides of the same coin, and is dispelled with the same reasoning. Even if the parties agree that the SPD is a controlling document for Mr. Harris' life insurance policy, the terms of the SPD specifically state that in the event of any inconsistency between the SPD and the Plan Document, the Plan Document will control. Ergo, armed only with access to the SPD and not the Plan Document, Plaintiff could not have known the unequivocal terms of the life insurance policy because she did not have the opportunity to discover any inconsistencies, or lack thereof, between the SPD and the Plan Document. In this case, it happens that there are no inconsistencies between the SPD and the Plan Document with regards to the life insurance policy. This, however, was not known by Plaintiff until she received the Plan Document on December

18

10, 2014, despite multiple requests to Defendant Board of Trustees for copies of all controlling or relevant ERISA documents. In sum, to claim simultaneously, as Defendant Board of Trustees does, that only the SPD (and not the Plan Document) is a controlling ERISA document, but at the same time stating that "[i]f there is any difference between the Plan Document and [the SPD], the Plan Document will control," (*id.*), belies logic. Accordingly, the Court finds that the Plan Document is a controlling ERISA document.

Having found that Defendant Board of Trustees was under an obligation to furnish a copy of the Plan Document at Plaintiff's request, the Court now turns to the appropriate time frame for statutory penalties under 29 U.S.C. 1132(c). It is undisputed that Plaintiff was provided a copy of the Plan Document on December 10, 2014. This will be the end date for statutory penalties. Defendant Board of Trustees argues that Plaintiff's requests for documents were "broad and did not include a specific request for the Plan Document." (Doc. 57 at 6). In Plaintiff's third request for documents, however, Plaintiff states:

> However, since we wrote the letter to you on March 14, we have received a copy of the insurance policy from the insurance company, United of Omaha Life Insurance Company. The policy defines active eligibility for a member as someone who is 'eligible for insurance according to the Policyholder's rules of eligibility as stated in the current Mid-South Carpenters Regional Council Health and Welfare Fund Rules of Eligibility and as approved by Our authorized representative in Our home office . . . .' Presumably, these 'Rules of Eligibility' would be included in the Plan documents we have previously requested from you; *however, if they are not, please consider this as a request for those documents.*

(Doc. 1-4 at 1–2) (emphasis added). These "Rules of Eligibility" are addressed at length in the Plan Document. (*See* Doc. 55 at 6; Doc. 39-2 at 22–31). Defendant Board of

Trustees received Plaintiff's third request for documents on May 1, 2013, and Defendant Board of Trustees did not respond, (Doc. 39 at 16), despite Plaintiff asking specifically for the document addressing "Rules of Eligibility," i.e. the Plan Document. Even giving Defendant Board of Trustees the benefit of the doubt that Plaintiff's first and second document requests may have been ambiguous as to the Plan Document, the Court finds that given Plaintiff's third request, Defendant Board of Trustees was under a duty to furnish a copy of the Plan Document. The proper start date for penalties under 29 U.S.C. 1132(c) is 30 days after the plan administrator receives a request; the proper start date for penalties in this case, therefore, is May 31, 2013. Given Defendant Board of Trustees' deliberate choice not to respond to Plaintiff's unambiguous third request for documents, and Defendants failure to respond *at all* to either the second or third request for documents, (*see* Doc. 39 at 15–16), the Court finds that assessing the maximum penalty is appropriate in this case. Accordingly, Defendant Board of Trustees will be assessed a penalty of **$61,380.00** for its failure to furnish a copy of the Plan Document, calculated at $110.00 per day for the 558 days between May 31, 2013 and December 10, 2014. This penalty is in addition to the $12,760.00 for Defendant Board of Trustees' failure to provide a copy of the Policy, discussed *supra* Section IV.B.

## VI.  CONCLUSION

Having conducted a *de novo* review of the R & R, as well as the record, Magistrate Judge Lee's R & R (Doc. 52) is hereby **ACCEPTED AND ADOPTED in part** and **REJECTED in part**. Accordingly:

- Defendant United's Motion for Judgment on the Pleadings (Doc. 21) is hereby **DENIED**.

- Defendant Board of Trustees' Motion for Summary Judgment (Doc. 37) is hereby **GRANTED IN PART** to the extent that it seeks judgment on Plaintiff's claim for relief for breach of fiduciary duties under 29 U.S.C. § 1132(a)(3) and **DENIED IN PART** in all other respects.

- Plaintiff's Motion for Summary Judgment (Doc. 40) is hereby **GRANTED IN PART** to the extent it seeks statutory penalties of $74,140.00 under 29 U.S.C. § 1132(c) and **DENIED IN PART** to the extent that it seeks additional penalties under 29 U.S.C. § 1132(c) and relief under 29 U.S.C. § 1132(a)(3).

- Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is hereby **REMANDED** for consideration under the Disability Continuation Provision as of January 31, 2012.

**SO ORDERED** this 21st day of September, 2015.

_/s/ Harry S. Mattice, Jr._
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE